IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony J. Harris, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 939 C.D. 2022 |
| | : | |
| County of Bucks (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | Submitted: April 21, 2023 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ELLEN CEISLER, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                                  FILED: August 17, 2023

Anthony J. Harris (Claimant) petitions this Court for review of the August 4, 2022 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that terminated Claimant's workers' compensation benefits on the basis that he had fully recovered from a work injury sustained on May 30, 2018. The WCJ also denied Claimant's review and modification petitions after concluding that Claimant failed to provide County of Bucks (Employer) timely notice that he sustained a new work injury in March 2020 and, therefore, Claimant failed to meet his burden of proving he sustained a March 2020 work injury. The issue before this Court is whether the WCJ erred in concluding that Claimant failed to provide Employer notice of the alleged March 2020 work injury, as required by Section 311 of the Workers' Compensation Act (Act).[1] After review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

## I. Background

Claimant suffered a lower back strain on May 30, 2018, after lifting a patient from a seated position (2018 Injury) while in the course and scope of his employment as a restorative aide for a long-term care nursing home. Certified Record (C.R.), Item No. 36. Employer began paying Claimant total disability benefits pursuant to a Notice of Temporary Compensation Payable issued on June 20, 2018, which described the work injury as lower back inflammation. C.R., Item No. 33. Employer subsequently issued a medical-only Notice of Compensation Payable (NCP) on August 27, 2018, as Claimant had returned to his preinjury position with no further loss of wages. C.R., Item No. 34. After Claimant's lower back symptoms recurred in March 2020, Claimant's total disability benefits were reinstated, effective May 31, 2020, pursuant to an amended NCP issued on September 25, 2020, which described the 2018 Injury as a lower back strain or tear. C.R., Item No. 35. Following a June 19, 2020 independent medical examination (IME) conducted by Amir Fayyazi, M.D., who opined that Claimant had fully recovered from the 2018 Injury, Employer filed petitions to terminate Claimant's total disability benefits. C.R., Item Nos. 2-3.

On November 6, 2020, Claimant filed review and modification petitions, alleging a March 2020 work-related aggravation of the 2018 Injury, and seeking an amendment to the description of his accepted work injury to include a disc herniation at L3-4, with radiculopathy and stenosis. C.R., Item Nos. 6-7. Claimant also alleged that he sustained a new work injury in March 2020 (2020 Injury), following the occurrence of three "events at work" while Claimant lifted patients. *Id.* Employer denied the allegations and argued that Claimant failed to provide proper notice of the alleged 2020 Injury. C.R., Item Nos. 9-10. Employer also filed a petition to

suspend Claimant's workers' compensation benefits, as Employer gave Claimant an offer of work, to which Claimant failed to respond in good faith. *Id.*, Item No. 12. On December 11, 2020, Employer issued a Notice of Compensation Denial (NCD), denying liability for the alleged 2020 Injury. C.R., Item No. 38.

## A. **Employer's Evidence**[2]

In support of its petitions, Employer presented the deposition testimony of Amy Fiero, who works in Employer's Human Relations (HR) department and oversees all workers' compensation claims. Ms. Fiero testified that she is very familiar with Claimant, as he filed several workers' compensation claims during the time he worked for Employer.[3] These claims included the alleged 2020 Injury, the 2018 Injury, a January 2017 work injury to his right hip and lower back, and a January 2015 work injury to his lower back.

Ms. Fiero reviewed Claimant's HR file, which indicated that Claimant last worked on March 6, 2020. He was not scheduled to work March 7-8, 2020. Thereafter, Claimant used vacation leave on March 9, 2020, and sick leave on March 10, 2020. On March 19, 2020, Ms. Fiero emailed Claimant, as she received a note from his treating physician, Simon Galapo, M.D., requesting that Claimant be excused from work from March 10, 2020, through March 30, 2020. C.R., Item No. 28, Fiero Dep., 4/20/21, Ex. D-2. Ms. Fiero asked if Claimant was out of work for "a work[-]related incident" and, "[i]f so," the date on which the incident occurred.

---

[2] Employer submitted the deposition testimony of Andy Dida, a nurse who worked occasionally with Claimant. Mr. Dida's testimony did not factor into the WCJ's decision, and, therefore, we will not summarize it herein.

[3] Claimant also filed claims for a facial contusion in August 2011, a twisted ankle in February 2013, a neck injury in July 2014, and a rib injury in December 2016. Claimant was out of work for 76 days following the July 2014 work injury.

3

*Id.* Claimant advised that his "condition" stemmed from the 2018 Injury, and that he was using family medical leave. *Id.* Ms. Fiero advised Claimant that Employer 'sworkers' compensation administrator, PMA, would review Claimant's absence "to determine if [he] was covered under workers' compensation." *Id.* Ms. Fiero received a second note from Dr. Galapo dated March 30, 2020, which took Claimant out of work for "an acute exacerbation of his chronic condition" until his next evaluation in "early May." *Id.* Neither of Dr. Galapo's notes suggested that Claimant sustained a new work injury in March 2020.

Ms. Fiero noted that, except for the alleged 2020 Injury, Claimant's workers' compensation claims were initiated after Claimant filed the required documentation. Ms. Fiero did not receive notice of the alleged 2020 Injury until Claimant filed his review and modification petitions. Claimant never reported any work incidents that occurred in 2020 or a written report documenting that he sustained a new work injury. In the absence of a reported work injury or incident, Ms. Fiero would not know that Claimant's lower back symptoms were related to a new incident or injury. Furthermore, Claimant stated in the March 19, 2020 email that his symptoms related to the 2018 Injury. Ms. Fiero denied that Claimant ever advised her he was injured at work while lifting a patient.

On November 6, 2020, Ms. Fiero emailed Claimant to notify him that Employer received an affidavit of full recovery from Dr. Fayyazi, who opined that Claimant had fully recovered from the 2018 Injury. Ms. Fiero advised Claimant that work was available, and that he should report to work on November 9, 2020. Although Ms. Fiero had confirmation that Claimant received the November 6, 2020 email, Claimant did not report to work.

4

Employer also submitted the April 20, 2021 deposition testimony of Mary Haraschak, Employer's director of the restorative nursing program. C.R., Item No. 30, Haraschak Dep., 4/20/21, at 5. Ms. Haraschak is familiar with Claimant, as he reported to her every morning, and she checked on him once or twice each day. Claimant did not complain of lower back pain in early 2020. Ms. Haraschak did not observe Claimant having any difficulty performing his job duties, and he never requested any changes in his job duties. Claimant never reported to Ms. Haraschak that a work injury or incident occurred between January and March 2020.

Finally, Employer submitted the deposition testimony of Dr. Fayyazi, an orthopedic surgeon who evaluated Claimant at a June 19, 2020 IME. As part of his evaluation, Dr. Fayyazi reviewed Claimant's medical records and diagnostic studies, including those predating the 2018 Injury. During the IME, Claimant related that he experienced back and leg pain, which he rated a 7 out of 10, and he reported difficulty with lifting, walking long distances, and sitting for long periods. Claimant advised that he injured his lumbar spine at work in 2018 while moving a patient. Claimant also injured his back at work in January 2017 after slipping on a wet floor. Claimant did not mention any work incidents that occurred in 2020 or the alleged 2020 Injury. Although Claimant denied any prior medical problems, one of his medical records referenced a 2014 motor vehicle accident (MVA). Claimant was "very evasive" when questioned about the 2014 MVA, but he did acknowledge sustaining injuries in the accident. C.R., Item No. 32, Fayyazi Dep., 2/22/21, at 14. Beyond the January 2017 work injury and 2018 Injury, Claimant "could not remember" if he had lost time at work due to injury. *Id.* at 15. Claimant's medical records reflected that, prior to working for Employer, he sustained a work injury to his lower back in 1999, he was involved in MVAs in 2000 and 2012, and he injured

his back at home on February 7, 2018; however, Dr. Galapo's records did not reference these incidents, and Claimant did not provide this information to Dr. Fayyazi during the IME.

Dr. Fayyazi noted that Claimant walked with his knees bent during his physical examination but was able to extend them fully when asked. Claimant demonstrated "minimal effort" when asked to walk on his toes. *Id.* at 17. Claimant was unsteady when performing a single leg stand, but had no instability or difficulty while walking in place, which "is the same exact maneuver[.]" *Id.* at 18. In general, Dr. Fayyazi felt that Claimant's behavior during the examination was "highly manipulated" and "not consistent with lumbar conditions." *Id.* Dr. Fayyazi also felt that Claimant manipulated the cervical examination, as Claimant shook and appeared to be in pain when bending his neck forward but denied feeling any discomfort in his neck. Further, Claimant did not express pain in his neck with palpation, and Dr. Fayyazi did not observe any muscle spasm. Claimant's forward extension in his lumbar spine was "inconsistent" and "actually the opposite" of what Dr. Fayyazi would expect to see in someone with back pain. Claimant made no attempt at backward extension when asked and complained of discomfort when Dr. Fayyazi palpated the middle of his back; however, Dr. Fayyazi did not see evidence of muscle spasm. Claimant demonstrated full range of motion in his upper extremities, although his initial "effort in moving was suboptimal." *Id.* at 21. Claimant advised that he had a bad hip, but would not clarify which hip was affected, and he would not allow Dr. Fayyazi to examine his lower extremities. Additionally, Claimant exhibited weakness in his lower extremities that was inconsistent with his ability to stand and walk on his toes and heels. Claimant's straight leg test was negative, which Dr. Fayyazi would not have expected with an acute extruded disc

6

herniation. Dr. Fayyazi noted a "slight loss" of curvature in Claimant's lumbar spine, but Dr. Fayyazi was otherwise unable to explain Claimant's behavior during the physical examination, and the majority of Dr. Fayyazi's findings were "consistent with [an] individual trying to manipulate" the examination. *Id.* at 20, 24.

Dr. Fayyazi reviewed a January 30, 2017 magnetic resonance image (MRI) study of Claimant's lumbar spine, which documented mild, multi-level disc bulges and facet arthropathy, but there was no evidence of disc herniation or stenosis. A subsequent lumbar spine MRI from June 8, 2018, contained the same findings and noted the presence of degenerative changes at multiple levels. It did not indicate the presence of an acute injury. Overall, Dr. Fayyazi found that the condition of Claimant's lower back in 2018 consisted of degenerative changes at multiple levels and osteoarthritis "consistent with an aging spine[.]" *Id.* at 26. An August 3, 2018 IME conducted by David Vergari, M.D., prior to Claimant's return to full duty that month, indicated that Claimant "was feeling great" and that he would return to work after his next epidural injection. *Id.* at 31.

A May 12, 2020 MRI, however, documented a "significant change" in the condition of Claimant's lumbar spine, as it revealed "severe spinal stenosis" and a left-sided disc herniation at L3-4. *Id.* at 27. Claimant's medical records from this period do not relate Claimant's lower back condition to a 2020 work incident, with the exception of a March 30, 2020 note from Dr. Galapo indicating that Claimant was injured while lifting a patient, which "resulted in the [Claimant's back] pain getting significantly worse until the point of incapacitation." *Id.* at 13. Dr. Galapo's note does not indicate a date or time frame for this incident.

Prior to testifying, Dr. Fayyazi reviewed Claimant's testimony, and he understood that Claimant related his current condition to three work incidents that

7

occurred in early 2020. Dr. Fayyazi noted that he asked Claimant about new injuries or accidents during the June 19, 2020 IME, and Claimant did not mention the alleged work incidents. Claimant's medical records, including those of the surgeon who recommended surgery to treat Claimant's L3-4 disc herniation, likewise did not contain any report of a 2020 work incident. Thus, Dr. Fayyazi did not believe a work injury caused Claimant's L3-4 disc herniation or stenosis.

Ultimately, Dr. Fayyazi opined that Claimant had fully recovered from the lower back strain Claimant sustained from the 2018 Injury, as he returned to work a few months later and continued to work his full-duty position until March 2020. Further, Claimant did not require additional treatment or work restrictions with respect to the 2018 Injury, as Claimant's imaging studies did not contain findings consistent with a lower back strain. Dr. Fayyazi did not believe that Claimant's current condition represented an aggravation of the 2018 Injury. Rather, Claimant's L3-4 disc herniation and stenosis represented a "new finding" that was unrelated to the 2018 Injury, and any positive findings in the June 19, 2020 IME solely related to Claimant's L3-4 disc herniation and spinal stenosis and to age-related degeneration. *Id.* at 38. Finally, Dr. Fayyazi did not believe that Claimant's L3-4 disc herniation and stenosis would have occurred over time. He expected that it was the result of a single incident that would have required treatment "within hours or a day[.]" *Id.* at 45.

## B. Claimant's Evidence

In support of his review and modification petitions, Claimant testified by deposition on February 5, 2021, and at a hearing before the WCJ on May 12, 2021. Claimant's job duties as a restorative aide included helping patients with mobility and exercise. On May 30, 2018, Claimant "pulled something" in his lower back

8

after lifting and holding a patient who lost his balance. C.R., Item No. 31, Claimant Dep., 2/5/21, at 8. Claimant was out of work for approximately three months and returned to work, without restrictions, although he continued to have lower back pain related to the 2018 Injury. Claimant treated his pain symptoms with medication and epidural injections, which kept Claimant's pain level between three and six.

In the early part of 2020, while lifting a patient with another employee, Claimant felt "something pop in" his lower back on the right side. *Id.* at 10. Claimant could not pinpoint the exact date this occurred, only that it was "in the beginning of 2020." *Id.* at 35. He did not report the incident to Employer and continued to work his full-duty position. Claimant experienced a second incident with this patient, which he also did not report to Employer.[4] A third incident occurred in February 2020 when Claimant attempted to pull a different patient to a standing position and "something pulled in [his] back" that hurt "really bad." *Id.* at 12, 39. Claimant stated that he completed his shift that day and did not return to work; however, he later indicated that he stopped working on March 10, 2020. Ultimately, Claimant agreed that he last worked on March 6, 2020, and he "went to the doctor" on March 10, 2020. *Id.* at 53. On March 19, 2020, Claimant emailed Ms. Fiero that he could not work due to a work injury sustained while lifting a patient. He forwarded Ms. Fiero a note from Dr. Galapo, who took Claimant out of work, as of March 30, 2020. Claimant could not remember if he ever spoke with Ms. Fiero on the phone.

Claimant acknowledged that he had work-related injuries to his lower back in 1999, prior to working for Employer, and in January 2017. He stated that he did not

---

[4] Claimant did not provide any details of this second incident, beyond its occurrence.

lose time at work after the January 2017 work injury.[5] Claimant did not recall having an x-ray of his lumbar spine in 2015, or whether he suffered any injury in 2015 that would warrant an x-ray of his lumbar spine. Claimant did not initially recall having a lumbar x-ray in February 2018, but later remembered seeking treatment for his lower back after slipping on wet pavement at home. Claimant was also advised by either Dr. Galapo or Dr. Fayyazi, or "maybe both of them[,]" that he had arthritis in his lower back. *Id.* at 26-27. Although Claimant attributes numbness in his right leg to the alleged 2020 work incidents, Claimant agreed that he experienced numbness and tingling in his right leg after the 1999 and 2017 work injuries and the 2018 Injury. *Id.* at 44. Claimant also experienced right leg symptoms caused by his right hip, which was replaced in 2016.

Claimant conceded that he was familiar with the process of filing a workers' compensation claim. Because the alleged 2020 work incidents occurred "while [Claimant] was already on workers' comp[ensation]," he did not believe he had to "report [them] again." *Id.* at 53. Claimant did not believe he could return to his preinjury position with Employer due to the severe pain in his lower back, which is exacerbated by standing and lifting. His current lower back pain symptoms are much worse than the pain caused by the 2018 Injury. C.R., Item No. 23, Notes of Testimony (N.T.), 5/12/21, at 21. Claimant underwent back surgery on February 24, 2021, which "helped a little." *Id.* at 23. He was prescribed physical therapy, which he had not yet attended. Claimant does not believe he can perform sedentary work, and he has not made an effort to obtain sedentary work. Claimant confirmed that he

---

[5] Ms. Fiero's testimony reflects that Claimant was out of work for 218 days following the 2017 work injury.

did not notify Ms. Fiero of a specific lifting incident from 2020 that caused his symptoms and that he just indicated that he "had a work-related injury." *Id.* at 32.

Claimant also presented the April 26, 2021 deposition testimony of his treating physician, Dr. Galapo, who first treated Claimant on July 25, 2018. At that time, Claimant provided a history that he suffered from chronic lower back and right leg pain caused by the 2018 Injury. Dr. Galapo understood that Claimant's job duties required heavy lifting while maneuvering and assisting patients. Dr. Galapo's treatment consisted of pain medication and epidural steroid injections. A June 8, 2018 MRI revealed "mild to moderate facet arthropathy" in Claimant's lumbar spine, with degenerative disc disease throughout. C.R., Item No. 25, Galapo Dep., 4/26/21, at 15. At a January 30, 2020 examination, Claimant reported an exacerbation of his lower back pain. At that time, Dr. Galapo diagnosed Claimant with spondylosis caused by the degeneration in his lumbar spine. Claimant called Dr. Galapo on March 19, 2020, and requested a note taking him out of work due to increased lower back pain that radiated down his legs. Claimant related his symptoms to lifting a patient at work on March 10, 2020. Based on Claimant's reported symptoms, Dr. Galapo took Claimant out of work from March 10, 2020, through the date of Claimant's next examination on March 30, 2020. Following the March 30, 2020 examination, Dr. Galapo diagnosed Claimant with "intervertebral disc disorder with a radiculopathy of the lumbosacral region." *Id.* at 21. He provided Claimant a second note excusing him from work through his "next evaluation in early May" due to "an acute exacerbation of his chronic condition." *Id.* at 22.

A May 12, 2020 MRI revealed a "moderately prominent broad-based central disc herniation" at L3-4 that produced "severe central stenosis" and diffuse bulging at the disc level, which caused "moderate foraminal stenosis[.]" *Id.* at 24-25. Based

11

on these results, Dr. Galapo referred Claimant to another physician, who ultimately performed Claimant's February 24, 2021 surgery. In a May 15, 2020 document provided to PMA, Dr. Galapo expressly indicated that Claimant's current symptoms related to the 2018 Injury.

Dr. Galapo opined that, due to the 2018 Injury, Claimant developed lumbar radiculopathy and lumbar facet arthropathy, which in turn caused Claimant's L3-4 disc herniation and stenosis. Dr. Galapo considered these diagnoses an aggravation of his prior lumbar condition, which caused the 2020 Injury. *Id.* at 28. He did not believe Claimant could return to his preinjury job. Having treated Claimant for more than two years and having observed that Claimant continued to work despite his injuries, Dr. Galapo took issue with Dr. Fayyazi's suggestion that Claimant was evasive or manipulated the June 19, 2020 IME. Dr. Galapo also disagreed that Claimant had fully recovered from the 2018 Injury.

During cross-examination, Dr. Galapo acknowledged that he did not review Claimant's medical records prior to May 30, 2018, although he understood that Claimant had a history of lower back pain, and that Claimant sustained a work injury to his lower back in January 2017. Dr. Galapo agreed that during the January 30, 2020 examination, and a subsequent examination on February 24, 2020, Claimant primarily complained of lower back pain and he did not have any radicular symptoms. Dr. Galapo was not aware of the 1999 work injury, or that Claimant injured his back after falling at home on February 7, 2018.

### C. WCJ Decision

In a decision circulated on December 1, 2021, the WCJ credited Claimant's testimony that he suffered from low back pain for several years, and that he

12

underwent diagnostic studies for these symptoms prior to May 30, 2018. C.R., Item No. 14, Finding of Fact (F.F.) No. 15. Claimant also credibly testified that he returned to his preinjury position three months after sustaining the 2018 Injury, and that he was not capable of returning to this position following his February 24, 2021 back surgery. *Id.* The WCJ also credited Claimant's testimony that he did not tell Dr. Galapo about "a specific injury" sustained in March 2020, and that he did not notify Ms. Fiero of the alleged 2020 Injury. *Id.* The WCJ discredited Claimant's testimony that he sustained the alleged 2020 Injury, as his testimony conflicted with the alleged mechanism of injury and the date on which it may have occurred. *Id.* Claimant denied any new work incidents or injuries during the June 19, 2020 IME with Dr. Fayyazi. *Id.* Although Claimant was familiar with the reporting requirements for a workers' compensation claim, he failed to report any work injury or incident occurring in early 2020. *Id.* The WCJ also discredited Claimant's testimony that he had not recovered from the 2018 Injury, as Claimant returned to his full-duty position on August 27, 2018, until he stopped working in March 2020. *Id.*

The WCJ credited Ms. Fiero's testimony that Claimant returned to his preinjury position on August 27, 2018, that Claimant did not give notice of a March 2020 injury, and that Claimant attributed his March 2020 symptoms to the 2018 Injury. F.F. No. 16. Ms. Fiero also credibly testified that she was not aware of the alleged 2020 Injury until Claimant filed his petitions on November 6, 2020, and that Claimant was asked to return to his preinjury job and failed to do so. *Id.* The WCJ also credited Ms. Haraschak's testimony that Claimant never complained of back pain to her, that Claimant did not appear to have any issues performing his duties,

13

and that Claimant did not report a work injury between January and March 2020. F.F. No. 18.

Regarding the medical testimony, the WCJ credited Dr. Fayyazi's opinion that Claimant had fully recovered from the 2018 Injury as of June 19, 2020. F.F. No. 19. The WCJ based his opinion on Dr. Fayyazi's status as a board-certified orthopedic surgeon who conducted a physical examination of Claimant and reviewed Claimant's medical records and diagnostic studies that pre- and post-dated the 2018 Injury, including a June 8, 2018 lumbar MRI that revealed degenerative changes, but no disc herniation or evidence of an acute injury. *Id.* The WCJ credited Dr. Fayyazi's opinion that Claimant did not aggravate the 2018 Injury, as the L3-4 herniation documented by a May 12, 2020 MRI would have disabled Claimant "almost immediately[.]" *Id.* As such, the L3-4 disc herniation was a new injury unrelated to 2018 Injury. *Id.*

The WCJ credited Dr. Galapo's testimony that the L3-4 herniation was a recent injury, and that Claimant did not identify a new "lifting incident" in 2020 that caused the injury. F.F. No. 20. The WCJ discredited Dr. Galapo's opinion that Claimant's L3-4 disc herniation and stenosis related to the 2018 Injury, in part because Dr. Galapo conceded that he did not review any medical records prior to May 30, 2018. *Id.* Furthermore, Dr. Galapo agreed that Claimant chiefly complained of low back pain, an arthritic condition, after October 2018. *Id.*

Therefore, the WCJ found that Claimant failed to meet his burden of proving that he sustained the alleged 2020 Injury, or that he provided timely notice thereof. F.F. No. 21. The WCJ granted Employer's termination petition and dismissed its suspension petition as moot. C.R., Item No. 14, WCJ Decision at 15. Claimant's

14

review and modification petitions were denied and dismissed. *Id.* Claimant appealed to the Board, which affirmed. This appeal followed.[6]

## II. Issues

On appeal, Claimant argues that the WCJ erred in concluding that Claimant failed to give proper notice of the alleged 2020 Injury.

## III. Discussion

Timely notice of a work injury is a prerequisite to receiving workers' compensation benefits, and the claimant bears the burden of showing that proper notice was given. *East Hempfield Twp. v. Workers' Comp. Appeal Bd. (Stahl)*, 189 A.3d 1114, 1117 (Pa. Cmwlth. 2018). Unless an employer has knowledge of the work injury, Section 311 of the Act requires that an employee give notice of a work injury within 120 days of its occurrence. 77 P.S. § 631. Where the injury, and its connection to the claimant's employment, is not known, the 120-day period for providing notice is tolled "until the [employee] knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment." *Id.* Notice under Section 311 "shall inform the employer that a certain [employee] received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified." Section 312 of the Act, 77 P.S. § 632. Although adequate notice of a work-related injury only requires a claimant to inform his employer that a work-related injury occurred at a specific time and place, "the notice only need be

---

[6] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva),* 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

15

conveyed in ordinary language, [it] can take into consideration the context and setting of the injury, and [notice] may be provided over a period of time or a series of communications, if the exact nature of the injury and its work-relatedness is not immediately known by the claimant." *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 537 (Pa. 2011).

Whether a claimant has complied with the notice requirements in Section 311 is a question of fact to be determined by the WCJ. *City of Phila. v. Workers' Comp. Appeal Bd. (Wilson)*, 767 A.2d 26, 29 (Pa. Cmwlth. 2001). The WCJ has exclusive province over questions of credibility and evidentiary weight, and the WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). This Court's role is not to reweigh the evidence or review witness credibility. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001). Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the record supports the findings actually made, and we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *A & J Builders*, 78 A.3d at 1238-39.

Claimant argues that, when he stopped working in March 2020, he believed the increase in his lower back symptoms solely related to the 2018 Injury. As a result, Claimant did not realize he sustained a new work injury until the May 12, 2020 MRI revealed an L3-4 disc herniation. Claimant suggests that Employer received timely notice of the alleged 2020 Injury because it received the May 12, 2020 MRI report within 120 days of Claimant's last date of employment. Claimant also contends that Employer had timely notice of the alleged 2020 Injury because

16

Dr. Galapo's March 30, 2020 note taking Claimant out of work indicated that he suffered from "an acute exacerbation of his chronic condition." Claimant's Br. at 15. Claimant suggests that, based on Dr. Galapo's note, Employer should have further investigated whether Claimant sustained a new work injury. Instead, after receiving the May 12, 2020 MRI report documenting the L3-4 herniation and stenosis, Employer scheduled the IME with Dr. Fayyazi, who opined that the L3-4 herniation and stenosis were unrelated to the 2018 Injury from which Claimant had fully recovered. Thereafter, Employer waited "120 days before filing [a termination petition]" and then argued that it did not receive timely notice of the alleged 2020 Injury. *Id.*

Claimant's argument is entirely unsupported by the record, which reflects that Employer *did* inquire as to whether Claimant's lower back symptoms related to the 2018 Injury or whether he sustained a new work injury. The WCJ credited Ms. Fiero's testimony that Employer was first notified of the alleged 2020 Injury when Claimant filed his petitions on November 6, 2020.[7] Ms. Fiero also credibly testified, and Claimant acknowledged, that Claimant was familiar with the process of filing a workers' compensation claim. Despite this knowledge, Claimant admittedly failed to notify Employer of any work incident that occurred in early 2020. In one such incident, Claimant felt "something pop" in his lower back while lifting a patient. C.R., Item No. 31, Claimant Dep. 2/5/21, at 10. In the third incident, Claimant felt "something pull" in his back while helping a patient stand, causing back pain so significant that Claimant could no longer work. *Id.* at 12. After Claimant stopped working in March 2020, Ms. Fiero specifically asked Claimant in a March 19, 2020

---

[7] The 120-day period would start to run when Claimant knew the disc herniation was work-related. Assuming Claimant was aware as of the May 12, 2020 MRI, Claimant had to file his petitions by September 9, 2020 to be timely.

17

email, if he was out of work for "a work[-]related incident" and, "[i]f so," the date on which the incident occurred. C.R., Item No. 28, Fiero Dep., 4/20/21, Ex. D-2. Claimant responded that his symptoms stemmed from the 2018 Injury. He did not report the 2020 work incidents, the last of which caused Claimant to stop working altogether. Then, on April 6, 2020, PMA contacted Dr. Galapo for information regarding the "acute exacerbation of [Claimant's] chronic condition" and whether Claimant's "current complaints/diagnoses are related to the" 2018 Injury. C.R., Item No. 25, Galapo Dep., Ex. D-1. Dr. Galapo replied on May 15, 2020, stating that Claimant's symptoms were an exacerbation of the 2018 Injury. Although Dr. Galapo attached a copy of the May 12, 2020 MRI report to his response, Dr. Galapo did not discuss either the work incident that allegedly caused Claimant's symptoms to worsen, or the presence of a new injury. Additionally, Claimant did not advise Dr. Fayyazi during the June 19, 2020 IME of any work incidents in 2020 that would have caused or contributed to his lower back symptoms.

Notably, the mechanism of injury for the 2018 Injury – lifting a patient from a seated position – is nearly identical to the 2020 work incidents Claimant described in his testimony. It cannot be said, therefore, that Dr. Galapo's March 30, 2020 office note attributing Claimant's symptoms to lifting patients at work, coupled with Dr. Galapo's response to PMA that Claimant's lower back pain relates to the 2018 Injury, as well as Claimant's response to Ms. Fiero, which also related Claimant's symptoms to the 2018 Injury, would serve to notify Employer that Claimant sustained a new work-related injury after May 30, 2018.

Furthermore, by Claimant's own argument, he knew from the May 12, 2020 MRI that his lower back condition included an L3-4 disc herniation and stenosis. Yet, he still failed to apprise Dr. Fayyazi during the subsequent June 19, 2020 IME

18

of the 2020 work incidents that allegedly caused that condition. Additionally, as of the May 12, 2020 MRI, Claimant knew, or should have known by the exercise of reasonable diligence, that his L3-4 disc herniation and stenosis existed and could be work related. Thereafter, Claimant had 120 days, or until September 9, 2020, to notify Employer of the alleged 2020 Injury. He did not do so, and the WCJ found, based on the credible testimony of Ms. Fiero, that Claimant's November 6, 2020 petitions served as the first notice Employer received regarding the alleged 2020 Injury.

Simply put, Claimant had multiple opportunities to advise Employer of any work incident that either increased the symptoms in his lower back or caused a new work injury, but he failed to do so within the time frame set forth in Section 311 of the Act. Accordingly, the WCJ properly concluded that Claimant failed to provide timely notice of the alleged 2020 Injury pursuant to Section 311 of the Act, and we affirm the Board.

_____
ELLEN CEISLER, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony J. Harris,            :
         Petitioner       :
                            :
      v.                   :    No. 939 C.D. 2022
                            :
County of Bucks (Workers'      :
Compensation Appeal Board),    :
         Respondent     :

# **O R D E R**

AND NOW, this 17th day of August, 2023, the August 4, 2022 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

                                _____
                                ELLEN CEISLER, Judge