928 A.2d 1006

**BOROUGH OF HEIDELBERG and Inservco Insurance Services, Inc., Appellants,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SELVA), Appellees.**

Supreme Court of Pennsylvania.

Submitted March 5, 2007.

Decided Aug. 20, 2007.

Gary M. Scoulos, Esq., Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Jason Andrew Rosenberger, Esq., Pittsburgh, for Borough of Heidelberg and Inservco Ins. Services, Inc.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., Workers Compensation Appeal Board, Harrisburg, for Workers' Compensation Appeal Board.

Kim Ross Houser, Esq., Mears, Smith, Houser & Boyle, P.C., Greensburg, for Rowene Selva.

Thomas W. Corbett, Esq., Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice EAKIN.

Rowene Selva (appellee) filed a claim petition against the Borough of Heidelberg and Inservco Insurance Services, Inc.

(appellants) seeking wage loss benefits for an injury she sustained October 17, 2003, while volunteering as an emergency medical technician (EMT) for the borough.[1] Before the Workers' Compensation Judge (WCJ), appellee testified she was the secretary of the Heidelberg Volunteer Fire Department and also responded to ambulance calls for the borough's ambulance corps. WCJ Decision, 11/29/04, at 1. She stated she was 64 years old and had not had a paying job in the past 32 years; however, she served the department for 24 years, 21 of which she was an EMT. *Id.*, at 1–2. She also stated that at the time of her injury she took care of her mother, who had Alzheimer's disease. *Id.*, at 2. Appellee further testified she received Social Security benefits since age 62 and was receiving them at the time of her injury. *Id.* Although she was receiving those benefits, she did not consider herself withdrawn from the workforce. *Id.* Appellants stipulated appellee was an employee of Heidelberg under § 601 of the Workers' Compensation Act, 77 P.S. § 1031, she fractured her right heel while actively engaged in her duties as a volunteer EMT, and she was disabled from her position as a volunteer EMT as a result of the injury. *Id.*, at 1. The WCJ noted appellants indicated the issue was "whether or not [appellee] was entitled to benefits in light of her unemployed status at the time of her injury." *Id.*

The WCJ found appellee was injured in the course of her employment as a volunteer EMT. *Id.*, at 2. The WCJ also stated § 601(b) of the Act supports the fact appellee was entitled to the presumption of wage loss, at least equal to the Statewide average weekly wage in computing her compensation under the Act. Finally, the WCJ found unpersuasive appellants' argument that appellee voluntarily retired from the workforce prior to her injury and was therefore not entitled to wage loss benefits.[2] The WCJ concluded appellee established

1. Appellants issued a Notice of Compensation Payable covering appellee's medical treatment only.

2. Based on the evidence of record, the WCJ found:

   (a) [Appellee] sustained an injury in the course of her volunteer employment on October 17, 2003. In so concluding, this Judge notes

she had not voluntarily withdrawn from the workforce and was entitled to wage loss benefits from the date of her injury. Thus, the WCJ granted appellee's claim petition and ordered appellants to pay appellee total disability benefits. *Id.*, at 4.

The Workers' Compensation Appeal Board (WCAB) affirmed, determining substantial evidence existed supporting the WCJ's finding appellee did not intend to withdraw from the workforce, and appellee was an employee under § 601 at the time of her injury. WCAB Decision, 7/13/05, at 4–5.

Appellants appealed to the Commonwealth Court, which affirmed. The court determined that as a member of a volunteer ambulance corps, appellee was an "employee" under § 601, and she was therefore entitled to an irrebuttable pre-

that [appellants do] not dispute the occurrence of the work injury and the disability resulting from the same;

(b) This Judge further finds that [appellee] is entitled to total disability benefits for the period of October 17, 2003 and continuing in the future, as limited by the Act. In so concluding, this Judge finds that it is the intention of the Workers' Compensation Act that members of a volunteer fire department or fire company, are deemed employees and that when they are injured in the line of duty, they are entitled to workers' compensation benefits even if they are paid no wages for compensation by the municipality for said services;

(c) This Judge finds that Section 601(b) of the Act supports the fact that [appellee] is entitled to the rebuttable presumption of wage loss, at least equal to the statewide average weekly wage [for] the purpose of computing compensation under sections 306 and 307;

(d) This Judge finds that [appellee] had an average weekly wage of $675.00 per week with compensation rate of $450.00 per week;

(e) This Judge does not find as persuasive [appellants'] argument that [appellee] had voluntarily retired from the workforce prior to her work injury, and therefore is not entitled to wage loss benefits. In so concluding, this Judge initially notes that she finds claimant's employment status outside the volunteer fire company is irrelevant. However, this Judge also notes that [appellee] specifically testified that she did not consider herself removed from the workforce. This Judge finds her testimony credible, especially in light of the of the [sic] fact that [appellee] continued to work in her position as an EMT for the Borough of Heidelberg even though she was entitled to Social Security retirement benefits. This Judge further notes that the receipt of Social Security retirement benefits does not totally prohibit [appellee] from working and therefore, does not find the receipt of the same as indicative of whether [appellee] has removed herself from the workforce.

*Id.*, at 2–3.

sumption her wages were at least equal to the Statewide average weekly wage. The court stated:

> We believe it is clear that, by providing in Section 601(b) that "there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage", the Legislature, as a matter of public policy, meant to compensate volunteer emergency workers for injuries they suffer while performing their duties without regard to their actual earnings. It is clearly in the public interest to provide a financial safeguard to the good citizens willing to volunteer their time and effort at some risk, at times, if they should suffer an unfortunate injury while in the public service.

*Borough of Heidelberg v. WCAB (Selva)*, 894 A.2d 861, 866 (Pa.Cmwlth.2006). The court further stated the question of whether appellee had withdrawn from the workforce is irrelevant because her status as a volunteer member of an ambulance corps entitled her to an irrebuttable presumption regarding her wages pursuant to § 601. *Id.*, at 866 n. 4.

We granted allowance of appeal to determine whether appellee is entitled to § 601(b)'s irrebuttable presumption her wages are at least equal to the Statewide weekly average. Our standard of review of a WCAB order "is limited to determining whether a constitutional violation, an error of law or a violation of Board procedure has occurred and, whether the necessary findings of fact are supported by substantial evidence." *Republic Steel Corporation v. WCAB (Petrisek)*, 537 Pa. 32, 640 A.2d 1266, 1268 (1994) (citation omitted). The proper interpretation of a statute is a question of law; thus, our standard of review is *de novo* and our scope of review, to the extent necessary to resolve the legal question, is plenary. *Gardner v. WCAB (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758, 761 n. 4 (2005).

Appellants concede appellee is an "employee" pursuant to § 601(a)(1) and (2) of the Act. Appellants' Brief, at 5. Appellants dispute appellee's entitlement to wage loss benefits, arguing she retired before her injury. *Id.* Appellants argue the lower courts misconstrued § 601(b) by providing appellee

with wage loss benefits irrespective of her time of injury earning status. *Id.*, at 9.

Section 601(b), as originally enacted, provided:

In all cases where an injury compensable under the provisions of this act is received by a member of a volunteer ambulance corps ... whether employed, self-employed or unemployed, there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage....

77 P.S. § 1031(b), as amended 1974, Dec. 5, P.L. 782, No. 263, § 15. In 1978, the legislature deleted the words "whether employed, self-employed or unemployed" from the section. 77 P.S. § 1031(b), as amended 1978, Nov. 26, P.L. 1328, No. 322, § 1. Appellants assert this amendment to the statute is significant because the legislature intended the deletion to restrict the coverage provided, as it would not have "made sense" for the legislature to delete those words if it did not intend to limit the class of potential claimants. Appellants' Brief, at 11.

Appellants argue the lower courts' interpretation of § 601(b) confuses the issues of eligibility for compensation and the rate of compensation applicable once eligibility is determined to exist. *Id.*, at 12. Appellants assert § 601(b) assigns a certain earnings level to a defined volunteer, "[i]n all cases where an injury compensable under [the] Act is received by an employee as defined in this Section...." *Id.* (quoting § 601(b)). They assert the irrebuttable presumption does not attach until establishment of a compensable injury. They contend § 601(b) is a computation formula that is to be utilized once wage loss eligibility has been determined. *Id.*, at 13 (*see White Haven Borough v. WCAB (Cunningham)*, 92 Pa. Cmwlth. 123, 498 A.2d 1003, 1005 (1985) ("[W]e view the Legislature's 'irrebuttable presumption' language to amount to no more than a computation device for providing what would be fair compensation for a public servant disabled by an injury suffered while serving as a volunteer in a hazardous occupation devoted to the safety and welfare of the community served.")).

Appellants argue since appellee did not suffer a loss of earning power, she is not entitled to wage loss benefits. Appellants reason, "[a] person who is retired cannot be said to have his or her wage-earning ability affected by an injury, because a retired person has no wage and therefore can have no *wage loss* ...." Appellants' Brief, at 18. Referencing *Republic Steel Corporation, Vitelli v. WCAB (St. Johnsbury Trucking Co.)*, 157 Pa.Cmwlth. 589, 630 A.2d 923 (1993), and *Dugan v. WCAB (Fuller Co. of Catasauqua)*, 131 Pa.Cmwlth. 218, 569 A.2d 1038 (1990), appellants assert the Commonwealth Court erred in determining the question of whether appellee withdrew from the workforce prior to her injury was irrelevant because appellee's status as a volunteer EMT entitled her to benefits under § 601(b). Finally, appellants argue the WCJ's finding appellee had not withdrawn from the workforce is not based on substantial evidence of record, and appellee should have been deemed ineligible for wage loss benefits.

To address appellants' claims, we must start with § 601 of the Workers' Compensation Act. Section 601(a) provides the word "employe" as defined in § 104 of the Act, shall include:

(1) members of volunteer fire departments or volunteer fire companies, including any paid fireman who is a member of a volunteer fire company and performs the services of a volunteer fireman during off-duty hours, who shall be entitled to receive compensation in case of injuries received while actively engaged as firemen or while going to or returning from a fire which the fire company or fire department attended including travel from and the direct return to a fireman's home, place of business or other place where he shall have been when he received the call or alarm or while participating in instruction fire drills in which the fire department or fire company shall have participated or while repairing or doing other work about or on the fire apparatus or buildings and grounds of the fire company or fire department upon the authorization of the chief of the fire company or fire department or other person in charge or while answering any emergency calls for any purpose or while

riding upon the fire apparatus which is owned or used by the fire company or fire department or while performing any other duties of such fire company or fire department as authorized by the municipality or while performing duties imposed by section 15, act of April 27, 1927 (P.L. 465, No. 299), referred to as the Fire and Panic Act;

(2) all members of volunteer ambulance corps of the various municipalities who shall be and are hereby declared to be employes of such municipality for the purposes of this act who shall be entitled to receive compensation in the case of injuries received while actually engaged as ambulance corpsmen or while going to or returning from any fire, accident, or other emergency which such volunteer ambulance corps shall attend including travel from and the direct return to a corpsman's home, place of business or other place where he shall have been when he received the call or alarm; or while participating in ambulance corps of which they are members; or while repairing or doing other work about or on the ambulance apparatus or buildings and grounds of such ambulance corps upon the authorization of the corps president or other person in charge; or while answering any emergency call for any purpose or while riding in or upon the ambulance apparatus owned by the ambulance corps of which they are members at any time or while performing any other duties of such ambulance corps as are authorized by the municipality;

77 P.S. § 1031(a)(1),(2).   Section 601(b) then provides:

(b) In all cases where an injury which is compensable under the terms of this act is received by an employe as defined in this section, there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage for the purpose of computing his compensation under sections 306 and 307.

*Id.,* § 1031(b).

■ "The purpose of the interpretation and construction of statutes is to ascertain and effectuate the legislature's intent." *Chanceford Aviation Properties, LLP v. Chanceford Twp. Bd.*

*of Supervisors,* 923 A.2d 1099, 1104 (2007) (citing 1 Pa.C.S. § 1921(a)). "Words and phrases [of a statute] shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Hannaberry HVAC v. WCAB (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 531 (2003) (citation omitted). "It is only when the statute's words are not explicit that the legislature's intent may be ascertained by considering the factors provided in 1 Pa.C.S. § 1921(c)." *Chanceford,* at 1104.

Section 601 provides a compensation formula triggered when an "employe" suffers a compensable injury. Section 601(a)(2) provides the word "employe" shall include "all members of volunteer ambulance corps of the various municipalities who shall be and are hereby declared to be employes of such municipality ... who shall be entitled to receive compensation in the case of injuries received while actually engaged as ambulance corpsmen...." 77 P.S. § 1031(a)(2). Under this section, volunteer ambulance corps members are employees of the municipality for which they volunteer, and are thus entitled to receive compensation for injuries sustained during the enumerated instances. Section 602(b) continues that when such an employee suffers a compensable injury, the irrebuttable presumption arises. Thus, volunteer ambulance corps members are entitled to the irrebuttable presumption regarding their wages if injured in one of the circumstances described in § 601(a)(2).

Here, appellee, who was injured while actively engaged as an ambulance corpsmen, is entitled to the irrebuttable presumption her wages are at least equal to the Statewide average weekly wage. Appellants stipulated appellee was injured while engaged in her duties as a volunteer EMT, and as a result she was disabled from her volunteer EMT position. WCJ Decision, 11/29/04, at 1. Since appellee was injured in the course of her volunteer EMT duties, which appellants do not argue does not fit into the circumstances described in § 601(a)(2), she is entitled to the mandated presumption.

Appellants' argument the deletion of the words, "whether employed, self-employed or unemployed" from the original enactment of § 601(b) indicates the legislature's intention to restrict the coverage provided fails. First, since the language of the statute is clear, we need not look further for the legislature's intent. 1 Pa.C.S. § 1921. Moreover, the deletion does not limit the class of potential claimants; rather, the irrebuttable presumption is now available to all employees defined by the section, without regard to their employment status.

Appellants' reliance on *Republic Steel Corporation, Vitelli,* and *Dugan* is misplaced when addressing appellee's entitlement to § 601(b)'s irrebuttable presumption in light of her time of injury earning status. *Republic Steel Corporation* addressed "whether a claimant who has voluntarily retired from the work place is entitled to receive benefits for an occupational disease claim under the Pennsylvania Workmen's Compensation Act. . . ." *Republic Steel Corporation,* at 1267. There, the claimant, who had worked in Pennsylvania's coal mining industry from 1939 until he retired in 1981, learned he was totally disabled as a result of coal worker's pneumoconiosis in 1985. *Id.* The employer argued claimant was not entitled to workers' compensation benefits as he suffered no wage loss, since he voluntarily retired and had no intention of returning to the workforce at the time he retired. *Id.,* at 1268. This Court agreed with the employer, holding "[b]enefits under the Act will only be permitted where the disabling, work related injury or disease, results in a loss of earning power." *Id.,* at 1270. Likewise, *Vitelli* and *Dugan* reached similar conclusions. *See Vitelli,* at 926; *Dugan,* at 1041 ("Although a claimant may continue to suffer a work-related physical disability, if that physical disability does not occasion a loss of earnings, then payment of workmen's compensation must be suspended. Claimant's loss of earnings was caused by his voluntary retirement and withdrawal from the labor market. Claimant's loss of earnings was not occasioned by his injury. Therefore, we conclude that workmen's compensation benefits were properly suspended.").

These cases, however, did not address § 601 of the Act. Through § 601, as discussed above, the legislature specifically entitled a volunteer ambulance corps member to the irrebuttable presumption if injured while actively engaged as an EMT, without regard to earning status. By definition, these volunteers receive no wages for the valuable services they provide their communities. The legislature, taking into account the nature of the position, enacted § 601 to ensure that those partaking in this laudable and selfless profession are entitled, at a minimum, to the presumed Statewide average weekly wage. *See also New Bethlehem Volunteer Fire Company v. WCAB (Kemp)*, 654 A.2d 267, 268 n. 2 (Pa.Cmwlth.1995). We agree with the Commonwealth Court that the legislature intended to compensate these individuals for injuries suffered in the course of their duties, irrespective of their time of injury earnings status. *Borough of Heidelberg*, at 866. Therefore, we hold that under the facts of this case, appellee is entitled to the irrebuttable presumption regarding her wages found in § 601(b).

The order of the Commonwealth Court is affirmed. Jurisdiction relinquished.

Chief Justice CAPPY, Justice CASTILLE, SAYLOR and BAER, Justice BALDWIN and Justice FITZGERALD join the opinion.