# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Black & Veatch Corporation, :
        Petitioner :
            :
    v.        :   No. 134 C.D. 2024
            :
Ashley Saranchak and Kalas MFG Inc. :
(Workers' Compensation Appeal Board),:
      Respondents   :   Submitted: December 9, 2024


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
       HONORABLE MATTHEW S. WOLF, Judge
       HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF              FILED: January 8, 2025


    Black & Veatch Corporation (Black & Veatch) petitions for review of a February 5, 2024 decision of the Workers' Compensation Appeal Board (Board) that affirmed a workers' compensation judge's (WCJ) determination granting Ashley Saranchak's (Claimant) claim petition against Black & Veatch. For the reasons that follow, we affirm.

## Background

    At issue in this case are two work-related injuries suffered by Claimant. The first incident occurred on December 9, 2020, while Claimant was employed by Kalas MFG Inc. (Kalas) (hereinafter "Kalas Incident"). The second incident occurred on September 29, 2021, while Claimant was employed by Black & Veatch (hereinafter "Black & Veatch Incident").

On November 8, 2021, Claimant filed a claim petition against Kalas alleging that she sustained an injury to her right knee, including but not limited to, tears of the anterior cruciate ligament (ACL) and medial collateral ligament (MCL) as a result of the Kalas Incident on December 9, 2020. On December 6, 2021, Claimant filed a second claim petition against Black & Veatch alleging that she sustained an aggravation of a prior knee injury now including, but not limited to, an ACL tear as a result of the Black & Veatch Incident on September 29, 2021. On March 15, 2022, Kalas filed a termination petition alleging Claimant fully recovered from the Kalas Incident as of February 28, 2022. The claim petitions and termination petition were assigned to a WCJ.

*Claimant's Testimony*

Claimant testified before the WCJ on December 8, 2021, and January 19, 2022.[1] She testified she began working for Kalas in 2020 as a full-time machine operator. She ran a machine that twisted copper wire from a standing position. On the day of the Kalas Incident, Claimant testified that she was lifting a 48-inch steel reel out of the machine to replace it with an empty one when the hydraulic brake gave out, causing the arm of the machine to give way and land on her right knee. Claimant felt pain in her right knee and right side immediately after the incident and reported it to her supervisor. She finished her shift and sought medical treatment the following day at Urgent Care, relaying excruciating pain and swelling. She was given work restrictions and placed on light duty work. *Id.* Urgent Care referred Claimant to Wellspan Orthopedics, where she treated with Amy Jo Krall, a

---

[1] Black & Veatch did not number the Reproduced Record as required by Pennsylvania Rule of Appellate Procedure 2173. Pa.R.A.P. 2173. Thus, this Court's citation to the Reproduced Record reflects PDF-electronic pagination. Claimant's testimonies are found at pages 14-52 and 59-101 of the Reproduced Record.

physician's assistant to Dr. Helwig. Wellspan Orthopedics ordered a magnetic resonance imaging (MRI).

Claimant testified that one month after her injury she was terminated from Kalas and began working for Fantasy Land Farms. She worked approximately ten hours per week at Fantasy Land Farms hooking cows up to a milker. Claimant then joined a labor union and began working for Black & Veatch on June 17, 2021, as a lay-down laborer. She testified that her knee never felt normal following the Kalas Incident.

Claimant testified that she then began working for 40-60 hours per week for Black & Veatch managing inventory equipment in the yard. She stated that she would perform physical inspections of vehicles, trucks, and other equipment in the yard which measured approximately half an acre. Reproduced Record (R.R.) 78. She relayed that some days she would not be on her feet much, and other days she would be actively walking around the yard. On September 29, 2021, the day of the Black & Veatch Incident, she explained that she stepped on a loose stone, her foot rolled, and she felt her knee buckle. R.R. 81. She did not fall but felt pain "and then some" in the same general location as the pain following the Kalas Incident. R.R. 43-44. She reported the incident to Black & Veatch and was referred to St. Luke's Hospital for treatment. She was given restrictions and returned to Wellspan Orthopedics for treatment. At some point she was referred to Dr. Fink at Wellspan Orthopedics, who specializes in surgery. Dr. Fink did not order a new MRI, but reviewed her prior one, and recommended surgery. Claimant testified that she currently experiences sharp pain, disconnection, instability, and no mobility in her right knee. R.R. 46.

3

On cross-examination, Claimant was questioned about her pain following the Kalas Incident but before the Black & Veatch Incident. R.R. 91. She explained that at that time, she felt "[o]verexertion maybe, just made it a little tender or whatnot. Sometimes I would have a little swelling, but nothing excruciating, nothing to keep me down." R.R. 91. During this time, she had some discomfort but was able to run without pain. *Id.*

*Claimant's Expert Testimony*

Claimant presented the deposition testimony of Ronald B. Lincow, D.O., who is board certified in physical medicine and rehabilitation and pain management. R.R. 167-228. Dr. Lincow testified that he first saw Claimant on November 19, 2021, and took her history. R.R. 175. At that meeting, Claimant explained the Kalas Incident and the Black & Veatch Incident. R.R. 176. Dr. Lincow stated that following the Kalas Incident, Claimant treated with orthopedics and had two x-rays which were unremarkable. R.R. 176. She then had an MRI of her right knee on December 16, 2020, which Dr. Lincow personally reviewed. His review of the MRI showed "quadriceps tendinitis and no quadriceps tendon tear[,] a lateral meniscus tear[,] chondromalacia Patella[,] edema and subcutaneous fat superficial to the distal quadriceps tendon, patella, and patellar tendon, presumably post-traumatic." R.R. 176. He explained that after the December 16, 2020 MRI, Claimant was offered surgery, but she declined.

He testified that on the day of the Black & Veatch Incident, Claimant "was walking in the yard and her right ankle rolled." R.R 177. He stated that Claimant immediately felt pain in her right knee, and it became swollen. *Id.* She reported the injury and treated at St. Luke's Hospital, where she was ultimately referred to Dr. Fink who did not take a repeat MRI but stated she had an ACL tear

4

that needed surgery. At the time of their first meeting, Claimant reported working full duty but stressed that her job does make modifications for her. R.R. 178. She complained of pain in her right knee that radiates proximally and distally (above and below), with thumping and aching. R.R. 178. She rated her pain as a four out of ten, that worsens with standing, walking, going up and down stairs, and twisting and bending. *Id.*

Dr. Lincow also performed a physical examination at the November 19, 2021 meeting. Dr. Lincow explained:

> So on the muscoskeletal examination, I first examined the left knee. The left knee was basically unremarkable. There was full range of motion; negative Lachman's and negative anterior drawer sign and negative posterior drawer sign. So I'll explain what those are. So the Lachman's sign along with the anterior drawer sign and posterior drawer sign are all signs to look for damage or injury to the anterior and posterior cruciate ligament. So those were all negative on the left side.
>
> However, on the right knee she had a positive Lachman's test, which is indicative of an anterior cruciate ligament tear, and a positive anterior drawer test, also indicative of an anterior cruciate ligament tear. Her quadriceps strength was four out of five. Otherwise the examination was unremarkable.

R.R. 178-79. Based on his review of Claimant's 2020 MRI, her history, and the physical examination, Dr. Lincow testified that his initial impression was that "she had a likely or questionable right ACL tear along with a right meniscus tear." R.R 179. He ordered a second MRI and referred her to an orthopedic. *Id.* The second MRI ultimately showed "chronic extensive tear of the anterior cruciate ligament proximally and no obvious meniscus tears." R.R. 180. Dr. Lincow next saw Claimant on January 24, 2022. At that appointment, she presented with significant

5

ongoing pain in the right knee which was burning along with skin discoloration. R.R. 181. At that point, Dr. Lincow opined Claimant suffered from a "significant ACL tear and complex regional pain syndrome" and placed her on work restrictions. R.R. 182-83. Dr. Lincow saw Claimant several other times, and her condition continues to worsen. He testified that she is interested in getting surgery to repair her right ACL, but the surgery is not recommended due to the complex regional pain syndrome. R.R. 190-92. When asked his opinion on whether Claimant's injuries stem from the Kalas Incident, the Black & Veatch Incident, or both, Dr. Lincow responded:

> I feel that within a reasonable degree of medical certainty that she suffered the right knee injury on the 12/9/2020 injury [(Kalas Incident)], and she had an ACL tear or at least partial tear from the first injury from 12/9/2020, which was treated with physical therapy and then was aggravated from the second injury from 9/29/2021 [(Black & Veatch Incident)] which ultimately led to the MRI which showed a full-thickness ACL tear.

R.R. 192. Dr. Lincow explained the basis for his opinion as follows:

> So she was initially injured on 12/9/2020 when this large, approximately 2,000-pound metal bar fell on her distal thigh. She had to wiggle to get the bar out. She had to, I guess, remove her leg from being pinned down. She had knee pain from that time of the injury. I reviewed the orthopedic notes, and there's some discrepancy. Some notes say that there was an ACL tear clinically. Other notes say there was not. The MRI did not show an ACL tear, but it was somewhat limited in the sense that the MRI did not have contrast, and using contrast would delineate the ACL a little better than without the contrast.
>
> But either way, she underwent physical therapy and conservative measures. She went about starting a new job for Black & Veatch. Then she suffered a second injury on

6

9/29/21 when she rolled her ankle and felt immediate pain in the knee. After this point she had orthopedic evaluations which showed a positive anterior drawer sign, a positive Lachman's sign, and also the MRI which was consistent with an extensive ACL tear. So she was at this point offered surgery and she – I guess she was initially offered surgery but subsequently developed complex regional pain syndrome as a result of the untreated ACL tear. Then that became the overlying issue.

So complex regional pain syndrome is typically a syndrome where there's increased sensitivity to pain where we can get skin changes, skin temperature changes, swelling, reduced range of motion, allodynia, et cetera. They're usually the result of some kind of untreated issue, and the issue in this case was the untreated ACL tear.

R.R. 193-94. Dr. Lincow opined that Claimant has not fully recovered from her work-related injuries and is unable to work until her symptoms are under better control. R.R. 196.

On cross-examination by Kalas' counsel, Dr. Lincow reiterated that the 2020 MRI did not identify an ACL tear. R.R. 198. Dr. Lincow also conceded that he did not examine Claimant until after the Black & Veatch Incident. R.R. 198. Dr. Lincow was aware of Claimant's work history following the Kalas Incident, and was further aware of her testimony that she could squat, climb, and run before the Black & Veatch Incident on September 29, 2021. R.R. 198-99.

On further cross-examination by Black & Veatch's counsel, Dr. Lincow clarified his testimony as follows:

Black & Veatch's Counsel: I understand your testimony concerning the December 16th, 2020 MRI report, but are you diagnosing [Claimant] with a partial tear of the ACL as a result of the Kalas [I]ncident?

Dr. Lincow: Radiographically I'm not diagnosing her with an ACL tear. However, there was some

7

documentation from office notes that did comment on a positive anterior drawer sign and a positive Lachman's sign before the September 29, 2021 injury which would indicate that there was some kind of tear present, but it was being treated conservatively at that point.

R.R. 205-06. Dr. Lincow also testified that he reviewed office notes from Wellspan Orthopedics, which reference Claimant's torn ACL following the Kalas Incident. R.R. 207-08. Dr. Lincow agreed that the office notes were inconsistent with the 2020 MRI which found no abnormalities to Claimant's ACL. R.R. 208.

*Kalas' Expert Testimony*

Kalas presented the testimony of Adam Buerk, D.O., a board-certified orthopedic surgeon. Dr. Buerk testified that he saw Claimant on February 28, 2022, and took her history, reviewed her records, and performed a physical examination. Based on the physical examination and review of diagnostic studies, Dr. Buerk diagnosed Claimant with an ACL tear, chronic pain syndrome, and complex regional pain syndrome as a result of the Black & Veatch work injury. R.R. 238. Dr. Buerk explained that he related his diagnosis to her second work injury with Black & Veatch, as opposed to her first work injury with Kalas, based, in part, on the injury mechanism. R.R. 239. He explained that an ACL injury would not typically result from a direct blow type of injury like the Kalas Incident but is more likely related to the twisting type of injury she suffered during the Black & Veatch Incident. *Id.* He explained that his opinion is diagnostically supported by the 2020 MRI, which showed no signs of ACL tear following the Kalas Incident. Dr. Buerk stated that he believed the Kalas Incident was a knee contusion, from which Claimant fully recovered from in three months. R.R. 239. Dr. Buerk testified that his opinion is consistent with Claimant's own testimony regarding the type of work she engaged

8

in following the Kalas Incident, and he opined that she would not have been able to work long term with an ACL tear in those capacities. R.R. 240.

Dr. Buerk opined that his diagnoses of interior cruciate ligament tear, chronic pain, and complex regional pain syndrome were new injuries stemming from the Black & Veatch Incident, not an aggravation of any injury she suffered from the Kalas Incident. R.R. 244. Dr. Buerk opined that Claimant is not recovered from the Black & Veatch Incident and that she needs ongoing work restrictions in relation to those diagnoses. *Id.* On cross-examination, Dr. Buerk confirmed that he reviewed the Wellspan Orthopedic treatment notes and testified that his opinion differs from those contained in the office notes from Wellspan Orthopedic providers. R.R. 251.

*Black & Veatch's Expert Testimony*

Black & Veatch presented the testimony of John Grandrimo, D.O., a board-certified orthopedic surgeon. Dr. Grandrimo saw Claimant on March 18, 2022, where he performed a physical examination and reviewed her medical records. Dr. Grandrimo explained that his physical examination of Claimant was limited due to her pain. R.R. 355-56. He stated that he reviewed her 2020 MRI, which showed a tear of the meniscus laterally, and a second MRI, which showed an ACL tear. R.R. 357-58. Based on his physical examination, Claimant's history, and her medical records, Dr. Grandrimo opined that Claimant suffered an ankle sprain as a result of the Black & Veatch Incident. He testified that he believed her ACL tear and complex regional pain syndrome resulted from the Kalas Incident.

**WCJ's Decision**

On March 20, 2023, the WCJ issued a decision granting, in part, Claimant's claim petition filed against Kalas. The WCJ concluded that Claimant sustained a right knee contusion as a result of the Kalas Incident. The WCJ also

9

granted Kalas' termination petition, finding that Claimant fully recovered from that injury effective February 28, 2022. The WCJ also granted Claimant's claim petition filed against Black & Veatch. The WCJ concluded that Claimant sustained an ACL tear and developed chronic pain and complex regional pain syndrome as a result of the Black & Veatch Incident. In so concluding, the WCJ credited the testimonies of the various expert witnesses as follows:

132. Dr. Lincow's testimony is credited only to the extent it is consistent with that of Dr. Buerk. It is rejected to the extent he opines Claimant sustained, at minimum, a partial tear of the ACL on December 9, 2020. Dr. Lincow was the only medical expert who had the chance to review the films of the December 2020 MRI of the right knee. His own review of this study failed to show any tear of the ACL. While Dr. Lincow suggested an ACL tear was diagnosed clinically in some medical records following the December 9, 2020 incident, he admitted others did not. Moreover, despite providing a detailed explanation concerning his opinions for the ACL tear and [complex regional pain syndrome], Dr. Lincow did not do the same for the meniscal tear seen on the December 2020 MRI study. He did not sufficiently explain whether that was an acute tear or degenerative tear.

133. Dr. Buerk's opinions are credited. They are clear, concise, and easy to follow. Dr. Buerk does not ask this Judge to rely on inconsistent medical records generated by doctors who did not testify in this matter. Dr. Buerk's diagnosis of a right knee contusion following the December 9, 2020 event and an ACL tear following the September 29, 2021 event yields an explanation as to why Claimant could work at the dairy farm(s) and Black & Veatch in between her two injury dates but became severely disabled [for] a short time following the second injury date.

134. Dr. Grandrimo's testimony is rejected where inconsistent with the opinion of Dr. Buerk. Dr. Grandrimo

10

diagnosed a right ankle sprain occurring September 29, 2021. It is conceded Claimant testified her right ankle rolled while walking in the yard on September 29, 2021. She confirmed she did not have any right ankle problems before her work injuries. But, Claimant never alleged an ankle injury in her Claim Petitions. Claimant did not testify about any subjective complaints specific to a right ankle injury. Any right ankle complaints were made in reference to Claimant's [complex regional pain syndrome] diagnosis that no medical expert believes originated from the ankle. Further, Dr. Grandrimo asserts Claimant's ankle injury would have no effect on the right knee. Even as a layperson, however, this Judge believes it is reasonable to presume if someone rolls their ankle as Claimant did one might turn or twist her knee in an attempt to keep from falling.

R.R. 431. Black & Veatch appealed the WCJ's decision to the Board.

**Board's Decision**

Before the Board, Black & Veatch argued that the WCJ erred in finding that Claimant sustained an ACL tear and developed chronic pain and complex regional pain syndrome as a result of the Black & Veatch Incident, as opposed to as a result of the Kalas Incident. Upon review, the Board rejected Black & Veatch's argument and affirmed the decision of the WCJ. The Board found that the WCJ accepted Claimant's testimony as to the occurrence of the work incidents and credited the testimony of Dr. Buerk as to the nature of the injuries; thus, Claimant met her burden of proof. Characterizing Black & Veatch's appeal as a request for the Board to reweigh the evidence, the Board noted that questions of weight and credibility are in the sole province of the WCJ. Black & Veatch appealed the Board's decision to this Court.

11

## Issue

On appeal,[2] Black & Veatch argues that the Board capriciously disregarded competent evidence of record in concluding that Claimant sustained an ACL tear and complex regional pain syndrome as a result of the Black & Veatch Incident. It maintains that the evidence of record establishes that those injuries were a result of the Kalas Incident. Thus, it argues the WCJ's decision was not supported by substantial evidence.

## Discussion

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434 (Pa. 1992). We have stated:

> In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Birmingham Fire Ins. Co. v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96 (Pa.Cmwlth.1995). Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, [] 652 A.2d 797 ([Pa.] 1995). Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations)*, [] 453 A.2d 710 (Pa. Cmwlth. 1982). It is solely for the WCJ, as the factfinder,

---

[2] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007).

> to assess credibility and to resolve conflicts in the evidence. *Bethenergy Mines*. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Dana v. Workers' Compensation Appeal Board (Hollywood)*, 706 A.2d 396 (Pa. Cmwlth. 1998). As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.*

*Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155-56 (Pa. Cmwlth. 1998). With these principles in mind, we consider Black & Veatch's challenge.

Black & Veatch maintains that the WCJ's findings are not based upon substantial evidence. Focusing on the medical records from Wellspan Orthopedics, it argues that all doctors repeatedly mention an ACL tear and the need for ACL reconstruction surgery following the Kalas Incident. Moreover, Black & Veatch notes that Claimant's testimony reflects that she attributed her high-grade ACL tear to the Kalas Incident. Finally, Black & Veatch submits that the WCJ ignored Dr. Lincow's testimony and argues "[i]t is factually impossible for the WCJ to limit the [Kalas Incident] to a knee contusion where Claimant's own doctor agrees an ACL tear occurred and ACL reconstruction was continually recommended prior to the [Black & Veatch Incident.]" Black & Veatch's Br. at 16-17.

Claimant responds that Black & Veatch's claim is without merit. She submits that Black & Veatch is asking this Court to improperly re-weigh the medical evidence submitted to the WCJ under the guise of a substantial evidence challenge. Claimant asserts that the WCJ accepted Claimant's testimony regarding the occurrence of the Kalas and Black & Veatch Incidents and credited the expert testimony of Dr. Buerk. The WCJ's credibility and weight of the evidence determinations may not be disturbed on appeal.

13

Upon review, we conclude that substantial evidence supported the WCJ's conclusions that Claimant sustained a right knee ACL tear and developed chronic pain and complex regional pain syndrome due to the Black & Veatch Incident. This Court's review of Claimant's testimony and the expert testimony of Dr. Buerk, both of which were credited by the WCJ, show ample support for the finding that Claimant's ACL tear and related injuries stemmed from the incident at Black & Veatch in 2021 as opposed to the incident at Kalas in 2020. Through its appeal, Black & Veatch essentially asks the Court to reweigh the medical evidence and make contrary credibility determinations, which we are prohibited from doing. While the Court is cognizant that the various experts had conflicting opinions about what injury occurred when, we note that "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mechanical v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007). Our review of the record shows ample evidence to support the findings made by the WCJ, and we decline the invitation to reweigh credibility determinations on appeal. Therefore, we affirm.



MATTHEW S. WOLF, Judge

Judges Fizzano Cannon and Dumas did not participate in this decision.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Black & Veatch Corporation,     :
                Petitioner    :
                         :
        v.            :   No. 134 C.D. 2024
                         :
Ashley Saranchak and Kalas MFG Inc.  :
(Workers' Compensation Appeal Board),:
               Respondents   :

# **O R D E R**

AND NOW, this 8th day of January 2025, the February 5, 2024 decision of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MATTHEW S. WOLF, Judge