# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cambria County Transit Authority, :
                Petitioner :
                                :
              v. : No. 1040 C.D. 2024
                                :
Ralph E. Bretz, Jr. (Workers' :
Compensation Appeal Board), :
                Respondent : Submitted: July 7, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE MATTHEW S. WOLF, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## <u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE WOLF                               FILED:  October 17, 2025

      Cambria County Transit Authority (Employer) petitions this Court for review of a July 17, 2024 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision by workers' compensation judge (WCJ) Michael Hetrick to deny Employer's petitions to terminate (Termination Petition) or suspend (Suspension Petition) workers' compensation benefits owed to Ralph Bretz (Claimant), and granted Claimant's petition for penalties (Penalty Petition) to be assessed against Employer. Employer argues that WCJ Hetrick improperly expanded the description of Claimant's injury and that Employer's own evidence "was competent and credible and sufficient to meet its burden." Employer's Br. at 8. Because WCJ Hetrick's decision is supported by substantial, competent evidence,

and because his award of penalties was within his lawful discretion, we affirm the Board.

## I. Background

Claimant sustained a work injury on January 14, 2022, when he slipped and fell while leaving his personal vehicle in Employer's parking lot, sustaining contusions. Certified Record (C.R.), Item No. 29, Notice of Temporary Compensation Payable (NTCP). Employer admitted liability via its NTCP and began paying weekly wage loss benefits of $602.50 based on an average weekly wage (AWW) of $896.55. *Id.* On August 11, 2022, Employer filed its Termination and Suspension Petitions, asserting full recovery as of an independent medical examination (IME) conducted on June 30, 2022. *Id.*, Item Nos. 2-3. Claimant filed timely answers to both petitions denying full recovery. *Id.*, Item Nos. 5-6. While Employer's Petitions were pending, Claimant filed his Penalty Petition on September 19, 2022, alleging that Employer had unilaterally discontinued benefits without a proper document or order by a WCJ. *Id.*, Item No. 8.

In opposition to the Suspension and Termination Petitions, Claimant presented the deposition testimony of his treating physician, Dr. Vincent Silvaggio, as well as his own testimony before WCJ Hetrick. In support of its Petitions, Employer presented the testimony of Tabitha Johnson, its Chief Human Resources Officer; Morgan Slater and Joshua Zollars, two private investigators working for Allied Universal; and Dr. Thomas Kramer, who performed the June 30, 2022 IME.

## A. Claimant's Evidence

### 1. Claimant's Testimony

At a January 19, 2023 hearing before WCJ Hetrick, Claimant, who was then 67 years of age, recalled that he began working for Employer as an "urban bus operator" in 2019. C.R., Item No. 17 (1/19/2023 Hr'g Tr.) at 24. As a condition of employment, Claimant was required to pass a physical examination, after which he was cleared to perform the position. *Id.* at 25. Between the beginning of his employment and the date of the work injury, Claimant missed two days of work for lower back and leg complaints. *Id.* at 26. Claimant also acknowledged pre-existing back pain that led to two surgeries in 2012 and 2013, which succeeded in improving his pain and mobility. *Id.* at 30-31. When his employment began, Claimant was no longer taking any medication for his back pain. *Id.* at 31.

On January 14, 2022, Claimant had just parked in the employee parking lot when he opened the door and slipped on black ice underneath him, falling on his rear end and lower back. 1/19/2023 Hr'g Tr. at 26-27. Claimant immediately sought treatment from Employer's panel provider, in whose care he remained until April 21, 2022. *Id.* at 27. Meanwhile, Employer placed Claimant in a modified-duty position, which involved odd jobs that did not require driving or lifting. *Id.* at 28. That came to an end on April 15, 2022, when Employer informed Claimant that it had decided to end the position and pay him workers' compensation instead. *Id.* at 28-29.

In a July 26, 2022 letter, Employer asked Claimant to return to his former position. *Id.* at 33. Claimant accepted and completed some refresher training, but only managed to work for several hours before persistent lower back and leg pain forced him to leave again. *Id.* at 34. He does not believe that he can return to his former position full-time, because the periods of sitting required lead to numbness

3

in his foot and leg, which is unsafe. *Id.* at 37. Claimant also recalled his workers' compensation checks stopped for approximately four weeks in August 2022, but that he received a check in September 2022 for $2,410.00, which was the amount past due. *Id.* at 38.

Testifying at a June 22, 2023 hearing, Claimant reported that he continued to experience symptoms from the work injury, including right leg pain and a pins-and-needles feeling in his right foot. C.R., Item No. 19 (6/22/2023 Hr'g Tr.) at 11. Claimant acknowledged being able to drive his personal vehicle at times, but that pain and numbness set in after using his right leg for longer than a half-hour. *Id.* at 13-14. In addition, Claimant can no longer enjoy recreational activities such as hunting, fishing, or riding his motorcycle. *Id.* at 13. While Claimant expressed willingness to resume his light-duty work, he did not believe that he could return to his pre-injury position. *Id.*

### 2. Dr. Silvaggio's Testimony

At a February 22, 2023 deposition, Dr. Silvaggio stated that he was a board-certified orthopedic surgeon. C.R., Item No. 25 (Silvaggio Dep.) at 4. Dr. Silvaggio recalled that Claimant first saw him on August 8, 2022, presenting with complaints of right foot and leg numbness. *Id.* at 6. Claimant also complained of lower back pain, but acknowledged that it was pre-existing, whereas his right leg issues had only occurred since the work injury. *Id.* 6-7. Dr. Silvaggio also reviewed Claimant's medical records, noting that a then-recent magnetic resonance imaging (MRI) revealed "evidence of some degenerative disease" in the lumbar spine. *Id.* at 7-8. Since the initial visit, Dr. Silvaggio has examined Claimant on three occasions. *Id.* at 11.

4

Based on his review of Claimant's medical records and examinations, Dr. Silvaggio opined that, as of the August 8, 2022 initial examination, Claimant was suffering from an aggravation of his pre-existing lumbar disease as well as the onset of piriformis syndrome. *Id*. at 16-17. Dr. Silvaggio explained that piriformis syndrome occurs when a contusion of the piriformis muscle, found in the buttocks, causes an irritation of the sciatic nerve, which surrounds it. *Id*. at 18. As for the aggravation of the lumbar disease, Dr. Silvaggio did not believe that it was a cause of Claimant's back pain, but explained that it accounted for the "majority" of Claimant's lower extremity pain and numbness. *Id*. at 17-18. Dr. Silvaggio believed that his diagnosis was corroborated when he referred Claimant for a piriformis injection that provided 20% relief to his pain and numbness symptoms. *Id*. at 18-19.

Concerning etiology, Dr. Silvaggio believed within a reasonable degree of medical certainty that the work injury was "a substantial and contributing factor" to both the onset of the piriformis syndrome and the aggravation of his pre-existing lumbar disease. Silvaggio Dep. at 18-19. While acknowledging that there were no objective findings consistent with trauma to the piriformis or lumbar spine caused by the work injury, Dr. Silvaggio maintained that subjective pain complaints are sometimes sufficient to support a diagnosis, given a "mechanism of injury" that lends support to those complaints. *Id*. at 41. Dr. Silvaggio explained that the work injury was of the kind to cause his symptoms, given that Claimant's falling forcefully on his buttocks "would put an axial load up through his spine" as well as "cause a problem in his piriformis, so his mechanism of injury could cause him to have issues with his lumbar spine." *Id*. at 40-41.

As of his most recent examination of Claimant on January 18, 2023, Dr. Silvaggio did not believe that Claimant was fully recovered from his work injury. *Id.* at 19. Because of the continued struggles with his symptoms, Dr. Silvaggio did not believe that Claimant could return to his preinjury job. *Id.* at 19. Dr. Silvaggio explained that the prolonged sitting that was required of him would require a frequent change in position, and that the lifting and bending that he formerly could perform were "not going to be possible." *Id.* at 20.

## B. Employer's Evidence

### 1. Dr. Kramer's Testimony

At a January 5, 2023 deposition, Dr. Kramer stated that he no longer performs surgeries due to a medical condition but remains a board-certified orthopedic surgeon. C.R., Item No. 31 (Kramer Dep.) at 7. Dr. Kramer recalled that, at the beginning of the June 30, 2022 IME, he discussed with Claimant the incident that occurred on January 14, 2022, and reviewed Claimant's medical records with him. *Id.* at 10. During the examination itself, Dr. Kramer observed "well-healed incisions from [Claimant's] prior surgery" and mild tenderness overlying the lower lumbar spine. *Id.* at 14. However, Dr. Kramer detected no spasm or swelling in Claimant's sacroiliac region, where the spine and pelvis meet. *Id.* at 14-15. Dr. Kramer also noted mild pain upon hyperextension of Claimant's right leg, which was "negative on the left side." *Id.* at 15. A straight leg raising test, which Dr. Kramer described as a test "to determine whether or not there is any radicular pain or radiculopathy," was negative. *Id.* at 15-16. Dr. Kramer observed "some mild difficulty with heel-walking" but none with toe-walking. *Id.* at 16. Following the IME, Dr. Kramer reviewed diagnostic studies, including the MRI mentioned by Dr. Silvaggio and an x-ray taken on January 14, 2022, the day of the work injury. *Id.* at 17.

6

Following the IME and his review of the relevant medical records, Dr. Kramer concluded that there was "no evidence to substantiate an injury other than that of a lumbar strain." Kramer Dep. at 23. As bases for that conclusion, Dr. Kramer cited the absence of any findings during the physical examination to support Claimant's subjective complaints of right leg pain as well as the negative straight leg raise test. *Id.* Dr. Kramer also noted that symptoms initially complained of on the morning of the work injury were consistent with "a soft tissue injury." *Id.* at 22. Based on these findings, Dr. Kramer opined that Claimant was "fully recovered from all injuries that he sustained as a result of the work event on January 14, 2022." *Id.* at 23. Dr. Kramer consequently filed an affidavit of full recovery, in which he opined that the "lumbar strain and contusion" sustained on that day had fully healed. *Id.* at 26; *see also* C.R., Item No. 40, Affidavit of Recovery.

## 2. Employer's Other Witnesses

At a January 19, 2023 hearing, Ms. Johnson testified that she had been working as Employer's Chief Human Resources Officer for approximately nine years. C.R., Item No. 17 (1/19/2023 Hr'g Tr.) at 7. Ms. Johnson recalled receiving a copy of Dr. Kramer's Affidavit of Recovery in late July 2022 and, believing that Claimant had been released back to full duty, drafting him a letter offering him his pre-injury position. *Id.* at 9. When Claimant accepted the offer, Ms. Johnson arranged for him to complete a customary round of refresher training, but he did not go back to work after its completion. *Id.* at 13.

Employer also presented the testimony of two Allied Universal investigators who performed surveillance of Claimant on Employer's behalf outside his home. At a deposition, Ms. Slater recalled that she conducted a total of 16 hours of surveillance outside Claimant's home on May 10, 2022 and May 11, 2022. C.R., Item No. 37,

7

Slater Dep. at 7. During the surveillance, Ms. Slater—who had confirmed Claimant's identity by reference to his public social media accounts—managed to capture one minute and six seconds of footage of Claimant on the first day and one minutes and eight seconds on the second day. *Id.* at 10. While recording the videos, Ms. Slater observed that Claimant was operating a machine in his yard that appeared to scatter a material that she did not recognize. *Id* at 19. Although Ms. Slater initially referred to the device as a wheelbarrow, she later acknowledged uncertainty about what it was. *Id.*

In his deposition testimony, Mr. Zollars recalled that he conducted a total of eight hours of surveillance on January 3, 2023. C.R., Item No. 38, Zollars Dep. at 7. During that time, Mr. Zollars managed to capture 58 seconds of video depicting Claimant outside his house. *Id.* While recording, Mr. Zollars observed that Claimant was walking a dog around his yard on a leash. *Id.* at 17. Mr. Zollars did not otherwise see Claimant lifting or carrying anything. *Id.*

### C. WCJ Hetrick's Decision

In a December 21, 2023 decision, WCJ Hetrick ruled that Employer failed to meet its burden on either the Termination Petition or the Suspension Petition. C.R., Item No. 11, (WCJ Decision), Conclusion of Law (C.L.) No. 3. Consequently, WCJ Hetrick denied and dismissed both petitions. *Id.*, Order. WCJ Hetrick also ruled that Claimant met his burden on the Penalty Petition, and assessed against Employer a penalty of $482.00, or 20% of the amount improperly withheld by Employer in 2022. *Id.*, C.L. No. 6.

Regarding the fact witnesses, WCJ Hetrick credited Claimant's testimony in full based on his observations during Claimant's testimony. WCJ Decision, Finding of Fact (F.F.) No. 65. WCJ Hetrick also noted that Claimant made a good-faith

8

effort to return to his pre-injury job. *Id.* WCJ Hetrick also found that Ms. Johnson testified credibly, but did not find her testimony dispositive of the issue before him. *Id.*, F.F. No. 66. As for Employer's surveillance witnesses, WCJ Hetrick found that they testified credibly but failed to uncover any evidence that Claimant was surreptitiously engaged in tasks that were inconsistent with his alleged symptoms. *Id.*, F.F. Nos. 65, 67.

As for the medical witnesses, WCJ Hetrick credited Dr. Silvaggio's testimony over Dr. Kramer's, and thereby determined that Claimant was not fully recovered from his work injury. WCJ Decision, F.F. No. 68. WCJ Hetrick explained that Dr. Silvaggio examined Claimant on several occasions whereas Dr. Kramer only examined him once for the purposes of performing the IME. *Id.* Additionally, Dr. Silvaggio found continued treatment necessary on the basis of Claimant's subjective pain complaints, which, as stated above, WCJ Hetrick found credible. *Id.*

Employer appealed to the Board, which affirmed. C.R., Item No. 14. This appeal followed.

## II. Issues

On appeal,[1] Employer contends that WCJ Hetrick "impermissibly expanded the description of the work injury and utilized said description to find [] Claimant's medical witness more credible than" Employer's. Employer's Br. at 8. Furthermore, Employer maintains that its evidence "was competent and credible and sufficient to meet its burden."[2] *Id.*

---

[1] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007).

[2] Because Employer raises no issue with regard to the Penalty Petition, we omit WCJ Hetrick's granting of it from further discussion.

### III. Discussion

In order to suspend a claimant's workers' compensation benefits, an employer bears the burden of proving either that there is work available within the claimant's physical restrictions or that his loss of earnings was caused by something other than the work-related injury. *Torijano v. Workers' Comp. Appeal Bd. (In A Flash Plumbing)*, 168 A.3d 424, 428. (Pa. Cmwlth. 2017). In this case, Employer contends that Claimant "has fully recovered from the recognized work injuries of January 14, 2022"—that is, Claimant's disability has not merely changed, but ceased altogether. Thus, while Employer appeals as to WCJ Hetrick's denial of both the Suspension and Termination Petitions, we deem Employer's arguments as to the Suspension Petition to be fully subsumed by its discussion of the Termination Petition and omit the Suspension Petition from further discussion.

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability has ceased or that any remaining conditions are unrelated to the work injury. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies its burden when its medical expert testifies unequivocally that the claimant has fully recovered and can return to work without restrictions and that there are no objective medical findings to substantiate the claimant's symptoms or to connect those symptoms to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The WCJ may terminate benefits only if he or she finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

Instantly, Employer maintains that Dr. Silvaggio's testimony fails to support Claimant's contention that he is not fully recovered because the diagnosis offered by Dr. Silvaggio—i.e., of aggravation of Claimant's pre-existing, degenerative, disc disease—is at variance with the injury listed in on the NCP, which only refers to contusions caused by Claimant's fall. Employer contends that if Claimant wished to expand the injury description, the proper way to do so would be with the filing of a petition to review his benefits. Employer's Br. at 23-24. In support, Employer points to this Court's holding in *Westmoreland County* that "the WCJ does not have the authority . . . to include injuries that developed over time as a result of the injury" when modifying an NCP, but "only injuries that existed at the time the NCP was issued." 942 A.2d at 217. Since "no findings were made and no discussion set forth on the issues of whether . . . documents failed to include all of the work injuries sustained by [] Claimant on January 14, 2022," Employer contends that WCJ Hetrick exceeded his authority by denying the Termination Petition on the basis of Dr. Silvaggio's testimony. *Id.* at 24.

We disagree with Employer that *Westmoreland County* provides a basis for overturning the decisions below. While it is true that we restricted a WCJ's authority to "injuries that existed at the time the NCP was issued," we also noted the "exception . . . where the claimant's added disability arises *as a natural consequence of the work injury*." *Id.* n.7 (emphasis added). Where the later injury is similar in kind to the one described in the NCP, we explained, "the employer still bears the burden of proving o[r] disproving the causal relationship even where the *precise* injuries are not listed in the NCP." *Id.* (emphasis added). In this case, Dr. Silvaggio testified unequivocally that the January 14, 2022 work injury was the cause of Claimant's piriformis syndrome as well as a substantial contributing factor to the

11

aggravation of his pre-existing degenerative lumbar disease.  Under *Westmoreland County*, Employer still carried the burden of proving that Claimant was fully recovered from the sequelae of his work injury before the Termination Petition could be granted.

Next, Employer argues that the evidence it presented to WCJ Hetrick was "more than sufficient to meet [its] burden under the Termination Petition," and that it was therefore "in error to deny the Petition."  Employer's Br. at 26. In apparent support of this assertion, Employer presents a detailed summary of Dr. Kramer's testimony.  *Id.* at 10-14.  Describing Dr. Kramer's opinion as "unequivocal and competent," Employer maintains that it met its evidentiary burden.  *Id.* at 26.

Employer's argument is unavailing.  This Court has consistently held "it does not matter [whether] there is evidence in the record which supports a factual finding contrary to that made by the WCJ[;] rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding."  *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998); *see also DTE Energy, Inc. v. Workers' Comp. Appeal Bd. (Weatherby)*, 245 A.3d 413, 421 (Pa. Cmwlth. 2021) (explaining that the "relevant inquiry in a substantial evidence analysis is not whether there is evidence in the record which supports a factual finding contrary to that made by the WCJ but, rather, whether there is any evidence which supports the WCJ's factual finding") (cleaned up).  Thus, even if it is true that substantial evidence supports Employer's assertions, that is insufficient to satisfy its burden of proof.

## IV.  Conclusion

Our role as an appellate court is "not to reweigh the evidence or the credibility of the witnesses, but simply to determine whether the WCJ's findings have the

12

requisite measure of support in the record as a whole." *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz)*, 114 A.3d 27, 33 n.5 (Pa. Cmwlth. 2015). Since WCJ Hetrick relied on substantial evidence of record in finding that Claimant is not yet recovered from his work injury, Employer does not provide a valid basis for disturbing his factual findings. Accordingly, we affirm the Board.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cambria County Transit Authority, :
       Petitioner :
          :
    v.     : No. 1040 C.D. 2024
          :
Ralph E. Bretz, Jr. (Workers' :
Compensation Appeal Board), :
       Respondent :

## O R D E R

AND NOW, this 17th day of October 2025, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated July 17, 2024, is hereby AFFIRMED.

           _____
           MATTHEW S. WOLF, Judge