# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delia Nagy,                          :
                    Petitioner       :
                                     :
           v.                        :    No. 391 C.D. 2023
                                     :
Medplast Engineered Products, Inc.   :
(Workers' Compensation Appeal        :
Board),                              :
                    Respondent       :    Submitted: July 5, 2024


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                    FILED: July 10, 2025


Delia Nagy (Claimant) petitions this Court for review of an April 7, 2023 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of Workers' Compensation Judge (WCJ) Donald Poorman to deny Claimant's Petition for Workers' Compensation (Claim Petition). Claimant argues that the Board's order constitutes legal error because WCJ Poorman rendered contradictory credibility determinations, failed to find an obvious causal connection between Claimant's work injury and her subsequent disability, did not rely on substantial evidence, and failed to issue a reasoned decision as required by Section

422(a) of the Workers' Compensation Act (Act).[1]  Because WCJ Poorman issued a reasoned decision that was supported by competent, substantial evidence of record, we affirm the Board.

## I.  Background

Claimant filed her Claim Petition on February 19, 2021, alleging that she sustained a work-related injury on April 24, 2020, in the nature of shortness of breath, fatigue, muscle aches, nausea, diarrhea, and headache.  *See* Certified Record (C.R.), Item No. 2, Claim Petition.  Medplast Engineered Products, Inc. (Employer) filed a timely answer asserting that Claimant's purported disability was not causally related to any work injury.  *Id.*, Item No. 4, Answer.  On April 29, 2021, Claimant amended the Claim Petition to include injuries to her chest, back, and arms occurring as a result of workplace exposure to toxic chemicals as well as repetitive lifting.  *Id.*, Item No. 17 (Claimant Dep., 4/29/2021), at 6.  Employer amended its answer to deny the additional allegations.  *Id.*

In support of the Claim Petition, Claimant presented her own fact testimony and the medical testimony of Dr. Ronald Lincow, her treating physician.  In its defense, Employer presented the testimony of Dr. Armando Mendez, who performed an orthopedic evaluation of Claimant, and that of Dr. Scott Manaker, who performed an independent medical examination (IME) of Claimant.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.  Section 422(a) of the Act requires the WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached."  77 P.S. § 834(a).

## A. Claimant's Evidence

At an April 29, 2021 deposition, Claimant testified that she began working for Employer, a metals fabricator, in January 2018. Claimant Dep., 4/29/2021, at 7-8. Although Claimant had been smoking cigarettes for more than 30 years at that point, she had never suffered from any pulmonary issues such as asthma, shortness of breath, or chest pain. *Id.* at 8. Claimant's only prior experience with back pain occurred in 2012, when she underwent neck fusion surgery following a car accident. *Id.* at 9. The surgery was an outpatient procedure, and Claimant recalled that she was fully recovered within three weeks. *Id.*

Regarding her work for Employer, Claimant recalled that her most common duties included "tagging" and "coating." *Id.* at 12. Tagging consisted of loading dies into a giant pressing machine, called a swager, in order to reshape or reduce pieces of metal. *Id.* at 13. Coating involved running pieces of titanium or stainless steel repeatedly through a thick, glue-like material in order to coat their surfaces. *Id.* at 14-15. Claimant recalled that one of the glue-like material's chief ingredients was acetone, which had a "repugnant" odor that one could smell immediately upon walking into the factory. *Id.* at 15. Other substances involved in tagging and coating included nitinol, a nickel alloy, and heated machine oil. *Id.* Claimant also noted that she spent almost all of her shift on her feet and that there was frequent lifting of heavy objects. *Id.* at 18.

After the onset of the COVID-19 pandemic in 2020, Employer designated Claimant and her coworkers as essential personnel who would be permitted to work their normal hours without closure. *Id.* at 31-32. The employees were instructed to wear face masks at all times beginning on April 17, 2020. *Id.* at 32. Claimant experienced considerable discomfort and difficulty breathing while wearing the

3

mask for extended periods. *Id.* at 33. On the morning of April 24, 2020, Claimant took a break after working for approximately two and a half hours on a task that involved substantial lifting. *Id.* at 35. Upon returning to work, Claimant sensed that she could not breathe and had to brace herself against a table to keep herself from falling over. *Id.* Claimant's supervisor led her to the plant cafeteria, gave her two aspirin, and called an ambulance. *Id.* at 36-37. Claimant experienced the sensation of someone "applying constant pressure to [her] chest while constantly pushing on the middle of [her] back." *Id.* at 37. After she was taken to Pottstown Hospital, Claimant was transferred to Phoenixville Hospital, which had a cardiac center, in case her issues were heart-related. C.R., Item No. 18, Claimant Dep., 6/15/2021, at 7. Claimant ultimately spent five days at Phoenixville Hospital, during which she underwent numerous diagnostic tests and was examined by specialists in pulmonology and cardiology. *Id.* at 8. While hospitalized, Claimant was diagnosed with community-acquired pneumonia, lung nodules, chest pain, and kidney cysts. *Id.* at 12, 20.

Following her discharge from Phoenixville Hospital, Claimant continued to visit several specialists in order to "get to the root cause of [her] shortness of breath, [her] chest pain, [her] upper back pain, [and her] arm pain," with the ultimate goal of returning to work. *Id.* at 9. Accordingly, Claimant underwent an abdominal ultrasound, a computed tomography (CT) scan, and a magnetic resonance imaging (MRI) of her chest, and was subsequently diagnosed with an enlarged fatty liver as well as cysts on her kidney, pancreas, and liver. *Id.* at 11-12. Claimant's primary care physician thus referred her to a urologist for her renal issues and a pulmonologist for her lung issues. *Id.* at 13, 18. After one pulmonologist advised Claimant that her lung issues were not causing her shortness of breath, Claimant

visited another pulmonologist who opined that Claimant's condition was psychosomatic. *Id*. at 13-14.

While seeking treatment for her ailments, Claimant had not returned to work since the April 24, 2020 incident. *Id.* at 16. A note from Phoenixville Hospital advised Employer that Claimant could return to work on May 5, 2020, and did not include restrictions on her work duties. *Id.* at 8. Claimant was convinced that she could not return fully to her pre-injury duties, but her primary care physician refused to issue a note taking her out of work or imposing restrictions, expressing the fear that doing so could place his medical license in jeopardy. *Id.* at 26. Thus, Employer's disability insurer refused to extend Claimant's disability benefits beyond May 25, 2020. *Id.* at 15. Since Claimant's absences after that date were unexcused, Employer terminated her employment days later. *Id.* at 18.

At the time of a hearing before WCJ Poorman on April 27, 2022, Claimant had still not returned to work. C.R. Item No. 16, 4/27/2022 Hr'g Tr. at 15. Meanwhile, Claimant reported that her difficulties with breathing and chest pain persisted. *Id.* at 16. Claimant noted that the Social Security Administration approved her application for disability benefits in October 2021. *Id.* at 18. However, Claimant also noted that those benefits were offset by workers' compensation benefits that the Social Security Administration mistakenly believed Claimant to be receiving. *Id.*

Claimant had also begun seeing Dr. Lincow to treat her persistent pain symptoms, a chiropractor recommended by Dr. Lincow, an osteopathic physician, and a pulmonologist to treat her shortness of breath. *Id.* at 13-14. Additionally, an orthopedic surgeon referred Claimant to a physical therapist whom Claimant began seeing regularly. *Id.* at 11. While Claimant expressed interest in returning to work,

she was doubtful of her ability to return to her old position with Employer, noting that, considering her difficulties with such simple tasks as lifting a gallon of milk, "standing for eight hours a day lifting heavy materials" was probably out of the question. *Id.* at 12. Claimant also acknowledged that her pulmonologist diagnosed her with emphysema, which she attributed to her 35 years of smoking, but testified that she had reduced her habit to just 2 or 3 cigarettes daily. *Id.* at 13-14.

At a December 15, 2021 deposition, Dr. Lincow stated that he was board-certified in physical medicine and rehabilitation. C.R., Item No. 19 (Lincow Dep., 12/15/2021) at 8. Following a referral by her counsel, Claimant was first examined by Dr. Lincow on July 21, 2021. *Id.* at 10. During the examination, Dr. Lincow observed reduced cervical and thoracic range of motion, muscle spasms, tenderness in the chest wall, generalized weakness, brisk reflexes in the upper extremities, and a positive Hoffman's sign (i.e., changes in reflexes indicative of radiculopathy). *Id.* at 16-17. A cervical MRI, ordered by Dr. Lincow and performed on August 3, 2021, revealed disc protrusions at C7-T1 and C5-C6. *Id.* at 20. Comparing the results to a 2014 MRI, Dr. Lincow noted that the earlier one revealed a less severe bulge at C5-C6 and nothing abnormal at C7-T1, indicating a worsening of Claimant's condition since then. *Id.* at 21. To treat her spinal symptoms, Dr. Lincow first prescribed epidural injections but, when Claimant objected that she was afraid of needles, recommended chiropractic treatment instead. *Id.* at 22. Dr. Lincow also prescribed a Lidocaine patch, which he credited for a recent improvement in Claimant's pain symptoms. *Id.* at 24.

Dr. Lincow's ultimate conclusion was that Claimant was suffering from cervical myelopathy, scattered memory loss, and upper extremity weakness, as well as the aforementioned positive Hoffman's sign. *Id.* at 18. Dr. Lincow also opined

6

that Claimant suffered from cervical spondylosis, which he first attributed to the lifting duties that she performed at work. *Id.* at 27-28. While acknowledging that Claimant complained initially of chest pain and difficulty breathing when she was hospitalized, and spent the next 15 months investigating those symptoms, Dr. Lincow surmised that the omission reflected a logical decision by Claimant to treat the more "life-threatening" issue before her back and neck pain. *Id.* at 26-27. Dr. Lincow nonetheless acknowledged that the apparent worsening of Claimant's spinal condition between 2014 and 2021 could not be conclusively ascribed to her work for Employer, given that one cannot determine the "chronicity" of disc herniations from an MRI. C.R., Item No. 19, Lincow Dep., 12/21/2021, at 12.[2]

## B. Employer's Evidence

At a March 3, 2022 deposition, Dr. Mendez stated that he is a board-certified orthopedic surgeon. C.R., Item No. 35, Mendez Dep., 3/3/2022, at 6. At his July 8, 2022 examination of Claimant, which Dr. Mendez characterized as an "orthopedic evaluation," Claimant explained to him that she "experienced severe pressure and pain in her chest and upper back" while "repeatedly lifting some pieces of metal on a repetitive basis" with a face mask on. *Id.* at 11-12. During the examination, Dr. Mendez palpated Claimant's spine, neck, mid-back and lower back, and saw no signs of pain, spasms, or deformity. *Id.* at 13. According to Dr. Mendez, Claimant "was able to walk with a normal gait . . . without any spasticity or limp," and her straight leg raise test was negative. *Id.* at 15. Dr. Mendez thus concluded that the examination was "very normal" and without anything objectively abnormal that he could detect. *Id.* at 15-16. Even Claimant's subjective pain complaints, Dr. Mendez noted, were limited to "some discomfort in her arms." *Id.* at 16. Following the

---

[2] Because of time constraints, Dr. Lincow's testimony was cut short on December 15, 2021, and was resumed on December 21, 2021. Lincow Dep., 12/21/2021, at 5.

examination, Dr. Mendez was given copies of records from Claimant's visits with various specialists, including Dr. Lincow, and the MRIs of Claimant's cervical spine. *Id.*

Following his examination of those records and the July 8, 2022 orthopedic evaluation, Dr. Mendez concluded that there was "no medical support" of the claim that Claimant "sustained any type of musculoskeletal injury whatsoever in the course of her employment" on April 24, 2020. *Id.* at 17-18. Dr. Mendez laid out three bases for his conclusion. First, the history provided by Claimant included no mechanism of injury that would connect the symptoms for which she was hospitalized on April 24, 2020, to any musculoskeletal event. *Id.* at 18. Second, Dr. Mendez referred to the records from Phoenixville Hospital on that day, which give no indication of a musculoskeletal injury. *Id.* at 18-19. Third, Dr. Mendez observed that the 2021 cervical MRI does not show any disc herniations, and that the health of Claimant's spine had actually improved since previous MRIs. *Id.* at 19.

Dr. Mendez did acknowledge the presence of "some spondylosis and some degenerative changes in both [Claimant's] cervical and [] thoracic region," but saw no evidence that any of those phenomena were caused or aggravated by, or in any way causally related to, her work injury. *Id.* at 20. Addressing Dr. Lincow's belief that Claimant sought medical treatment for her breathing and chest pain issues because they appeared to be a more immediate threat than her musculoskeletal issues, Dr. Mendez noted that "there is some validity to that concept." *Id.* at 23. However, Dr. Mendez concluded that the theory "does not hold much credibility" in this case, given that "there was really nothing" in the record to establish ailments afflicting Claimant's neck or musculoskeletal system contemporaneous with the April 24, 2020 work incident. *Id.* at 23.

8

At a February 16, 2022 deposition, Dr. Manaker testified that he was board-certified in pulmonology and internal medicine. C.R., Item No. 36, Manaker Dep., 2/16/2022, at 7. Dr. Manaker recalled that, at the beginning of the May 19, 2021 IME, he asked Claimant to summarize her medical history. *Id.* at 15. Claimant responded that she was a longtime smoker who had developed emphysema as a result of the smoking, that she was taking prescription medication for anxiety, that she was obese, and that benign cysts had been found in her kidney, liver, pancreas, and lungs. *Id.* at 15-16.

During the examination, Dr. Manaker administered three tests in order to evaluate Claimant's pulmonary function. *Id.* at 20. For the first, Claimant was instructed to blow as hard as possible through a tube so that air flow could be measured; this test revealed some restricted air flow that was to be expected from someone with mild emphysema. *Id.* at 20. For the second, Claimant sat in a clear, airtight box and breathed in and out rapidly so that the size of her lungs could be evaluated; this test revealed "basically normal" lung volume. *Id.* at 21. Lastly, in order to evaluate diffusion capacity (i.e., the lungs' ability to take in oxygen and expel carbon dioxide), Claimant inhaled a test gas mixture and blew it out while a technician measured the gas; this test revealed "completely normal" diffusing capacity. *Id.* at 20-21. Dr. Manaker also had x-rays taken, the results of which were also "completely normal." *Id.* at 22. Ultimately, Dr. Manaker opined that there was nothing wrong with the functioning of Claimant's lungs apart from minimal abnormalities "entirely explainable by her obesity and mild emphysema." *Id.* In summary, Dr. Manaker concluded that there was "no evidence of any occupational injury." *Id.*

Analyzing the findings of the examination, Dr. Manaker observed a sharp contrast between the unremarkable test results and Claimant's complaints of breathing difficulty and chest pain, which he described as "vastly disproportionate." *Id.* at 22. Dr. Manaker attributed the discrepancy to Claimant's anxiety. *Id.* at 22-23. A review of Claimant's extensive medical records following the examination revealed to Dr. Manaker that Claimant had a history of "going from doctor to doctor" in search of an objective basis for her subjective pain complaints, and that each visit only resulted in "benign findings." *Id.* at 24. For Dr. Manaker, this reinforced his conclusion that Claimant's symptoms were psychological in origin. *Id.* at 25.

### C. WCJ Poorman's Decision

In his July 7, 2022 decision, WCJ Poorman denied the Claim Petition. C.R., Item No. 5, WCJ Decision, Order. While crediting Claimant's testimony as to the April 24, 2020 work incident and her medical treatment since, WCJ Poorman found Claimant's testimony not credible "regarding the causal relationship of her medical conditions to her work." *Id.*, Finding of Fact (F.F.) No. 8. WCJ Poorman pointed out that Claimant presented no medical testimony relating her symptoms to workplace chemical exposure or any other kind of work event. *Id.*, F.F. No. 9.

As for the medical experts, WCJ Poorman credited Dr. Manaker's testimony "that Claimant did not sustain a work-related pulmonary condition." *Id.* WCJ Poorman explained that the opinions of Dr. Manaker, a pulmonologist, were based on his own examination and pulmonary testing, as well as a review of Claimant's treating physicians, none of whom diagnosed a work-related pulmonary condition. *Id.* Dr. Mendez's testimony was also found credible, as he was "a board[-]certified orthopedic surgeon [who] based his opinions on a normal physical examination and review of medical records." *Id.* at 10. Thus, WCJ Poorman accepted Dr. Mendez's

10

conclusion that Claimant suffered no work-related orthopedic injuries. *Id.* By contrast, WCJ Poorman rejected Dr. Lincow's diagnosis of cervical injuries as a result of Claimant's lifting activities, observing that Claimant alleged chest pain and breathing difficulties "rather than an acute orthopedic injury." *Id.*

Claimant appealed to the Board, which affirmed by unanimous vote. *See* C.R., Item No. 10. This appeal followed.[3]

## II. Discussion

In a claim petition proceeding, the burden of proving all necessary elements to support an award rests with the claimant. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must establish that his injury was sustained in the course of employment, resulting in a loss of earning power. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515-16 (Pa. Cmwlth. 2002). If the causal relationship between the work and injury or work injury and disability is not obvious, then that relationship must be established with unequivocal medical testimony. *Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel)*, 626 A.2d 1144, 1146 (Pa. 1993). By contrast, when the causal relationship is obvious, no medical evidence is required. *Kensington Mfg. Co. v. Workers' Comp. Appeal Bd. (Walker)*, 780 A.2d 820, 822 (Pa. Cmwlth. 2001). An injury is obviously work-related if it immediately manifests itself while the claimant is in the act of performing work, the nature of which can cause the injury; a classic example would be a laborer who grabs his back in pain after lifting his shovel full

---

[3] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva),* 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

11

of wet concrete. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873 (Pa. Cmwlth. 1998). The key feature of obviousness, this Court has observed, is that it involves a nexus clear enough "that an untrained layperson would not have a problem in making the connection between the injury and the disability." *Tobias v. Workmen's Comp. Appeal Bd. (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784 (Pa. Cmwlth. 1991).

On appeal, Claimant makes four main arguments.[4] First, Claimant maintains that WCJ Poorman rendered contradictory credibility determinations regarding her testimony. Second, Claimant argues that WCJ Poorman's denial of the Claim Petition was improper as the connection between her injury and disability is obvious and thus negates the requirement of expert medical testimony under *Kensington Manufacturing*. Third, Claimant argues that both Dr. Mendez's and Dr. Manaker's testimony failed to satisfy the substantial evidence test and were improperly relied upon in WCJ Poorman's decision. Lastly, Claimant maintains that WCJ Poorman failed to issue a reasoned decision as required by Section 422(a) of the Act, 77 P.S. § 834(a).

### A. Credibility Determinations

First, we address Claimant's argument that WCJ Poorman's credibility findings concerning her testimony were contradictory. Claimant reasons that if her testimony was credible regarding her work duties and the events occurring on April 24, 2020, then "it follows that she did in fact sustain a work-related injury." Claimant's Br. at 14. As WCJ Poorman noted in his factual findings, Claimant "repeatedly lifted and pulled items for two and a half hours, and after taking a break, she experienced constant pressure to her chest and the middle of her back," after

---

[4] We have combined Claimant's third and fourth appeal arguments (concerning Dr. Manaker's and Dr. Mendez's testimony, respectively) for ease of disposition.

12

which she was hospitalized. *Id.* For further support, Claimant points to the records created at Phoenixville Hospital upon her admission, which noted that Claimant was "at work and developed pain and pressure in the center of her chest with radiation to her back." *Id.* at 15. Claimant therefore concludes that WCJ Poorman's credibility determinations are "arbitrary and capricious, or at the very least flawed," and should be overturned. *Id.* at 16.

Claimant's argument is unavailing. We see no contradiction between WCJ Poorman's conclusion that Claimant was credible as to her April 24, 2020 emergency room visit and subsequent hospitalization, and his conclusion that her testimony failed to support the claim that her persistent medical issues were related to her work. There is no dispute that Claimant suffered a medical emergency on April 24, 2020, or that she has complained of chest pain and difficulty breathing since then. Manifestly distinct from those undisputed observations is the question of her condition's etiology, which Claimant's testimony does nothing to explain. Claimant's reliance on the Phoenixville Hospital records is misplaced, since those records are devoid of any evidence of a causal connection between Claimant's injury and her work duties. Lastly, we reject the contention that WCJ Poorman's credibility determinations were arbitrary and capricious, which this Court has defined as "totally without support in the record." *Republic Steel Corp. v. Workmen's Comp. Appeal Bd.*, 421 A.2d 1060, 1063 (Pa. 1980). To the contrary, WCJ Poorman's conclusion issues logically from his observation that Claimant's testimony was insufficient to establish a causal connection.

## B. Obviousness of Injury

Next, we address Claimant's contention that her continuing health issues are obviously work-related. Claimant reasons that hers "is a rare case in which the

13

causal connection between the . . . events at work and [her] disability is so obvious, it was not necessary for her to present medical evidence." Claimant's Br. at 18. For support, Claimant points to this Court's holding in *Northwest Medical Center v. Workers' Compensation Appeal Board (Cornmesser)*, 880 A.2d 753 (Pa. Cmwlth. 2005). In that case, a claimant nurse was moving a large patient when he immediately felt a pop and experienced pain and stiffness in his back. *Id.* at 755. When he awoke the next morning with substantial back pain, the claimant was assigned light-duty work, which worsened the condition of his back to the point that he underwent surgery for a herniated disc. *Id.* A WCJ granted the claim petition, finding that "the requisite relationship existed to establish a work-related injury," and the Board affirmed. *Id.* On appeal, we agreed, observing that

> [t]he credible testimony of [the c]laimant that he felt something pop in his back, he felt pain, his back became stiff and he mentioned it to a co-worker, woke with a lot of back pain the next day, called his chiropractor and saw him at the earliest possible date with symptoms not previously present are substantial evidence supporting the WCJ's finding of the work injury.

*Id.* Claimant argues that the instant matter is analogous "because the work-related events of April 24, 2020 (as found credible by [WCJ] Poorman) and her pulmonary condition, notably her shortness of breath, was so obvious[] she was not required to present medical evidence." Claimant's Br. at 18.

Claimant's argument is unpersuasive. There is nothing in the record to suggest the existence of a causal nexus between Claimant's work duties and the ailments listed in the Claim Petition—i.e., "shortness of breath, fatigue, muscle aches, nausea, diarrhea, and headache." To the contrary, Dr. Manaker explained credibly that, to the extent Claimant suffers any breathing difficulties at all, they were obviously caused by her smoking-related emphysema rather than any work

duties. Claimant's reliance on *Cornmesser* is thus misplaced, since the mechanism of injury in that case (the considerable strain on the claimant's back caused by the lifting of the large patient) corresponded directly to the disabling symptoms that followed. In the instant matter, by contrast, Claimant's own treating physicians failed to reach a conclusion that her symptoms were work-related. Since it has never been obvious in this case that Claimant suffered a disabling, work-related pulmonary injury, the establishment of the causal relationship required unequivocal medical evidence, which Claimant has not presented.

### C. Sufficiency of the Evaluating Physicians' Testimony

Next, we address Claimant's contention that the testimony of Drs. Mendez and Manaker failed to constitute substantial evidence. In Claimant's view, Dr. Manaker's conclusion that she suffered no disabling work injury is "flatly refuted" by the Social Security Administration's determination that she was unable to work. While conceding that the Social Security Administration's findings were not binding on WCJ Poorman, the contradiction demonstrates that "Dr. Manaker's opinion fails to satisfy the substantial evidence test." *Id.* at 20. Claimant argues Dr. Mendez's testimony was similarly deficient, since Dr. Mendez himself conceded that there was "some validity" to the theory that Claimant sustained work-related injuries to her cervical spine but sought treatment for her chest and breathing issues first because they appeared more life-threatening. *Id.* at 24 (citing Mendez Dep. at 23).

Claimant's argument is lacking in merit. Whatever the Social Security Administration's rationale may have been for finding Claimant to be disabled, its findings are irrelevant to the question of whether Claimant's symptoms are work-related, which was the main focus of Dr. Manaker's testimony. As for Dr. Mendez's alleged concession that Claimant may possibly have sustained cervical spine injuries

at work but put off treatment because they were less life-threatening, we see no basis for Claimant's contention that the concession undercuts the sufficiency of Dr. Mendez's testimony. Dr. Mendez ultimately rejected that theory on the ground that there was nothing in the record to suggest a spinal injury resulting from the April 24, 2020 incident. Since Dr. Mendez's testimony on that issue is uncontradictory, we see no reason to disturb WCJ Poorman's finding that the testimony constituted substantial evidence.

### D. Reasoned Decision

Lastly, we turn to Claimant's argument that WCJ Poorman failed to issue a reasoned decision. Claimant reasons that WCJ Poorman's decision is unreasoned because he issued "a contradictory credibility determination concerning her testimony," failed to address the issue of work-relatedness or its obviousness, and failed to explain why he did not find her disabled "when the Social Security Administration found otherwise." *Id.* at 26. Accordingly, Claimant asks that this Court remand the matter with instructions to issue a reasoned decision.

Claimant's argument, which essentially recapitulates each of her previous arguments, is unpersuasive. As explained above, WCJ Poorman's finding of Claimant's testimony to be partly credible and partly not credible was in no way contradictory. Meanwhile, the questions of work-relatedness and obviousness are addressed at length in WCJ Poorman's decision. Moreover, WCJ Poorman had no duty to explain why he reached a conclusion seemingly at variance with one reached by the Social Security Administration, which was of minimal relevance to the question before him. Accordingly, we see no reason to disturb WCJ Poorman's conclusions on reasoned decision grounds.

### III. Conclusion

In this matter, Claimant failed to carry the burden of proving that she sustained a work-related injury. Since the causal connection between her lingering symptoms and her work duties was not obvious, Claimant was required to present unequivocal medical evidence establishing that connection. As WCJ Poorman explained in his decision, Claimant failed to do so in this case. Accordingly, we affirm the Board.

_____
MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delia Nagy,                                    :
                         Petitioner            :
                                               :
              v.                               :    No. 391 C.D. 2023
                                               :
Medplast Engineered Products, Inc.             :
(Workers' Compensation Appeal                  :
Board),                                        :
                         Respondent            :


# **O R D E R**


AND NOW, this 10th day of July 2025, the Order of the Workers' Compensation Appeal Board in the above-captioned matter, dated April 7, 2023, is hereby AFFIRMED.


_____
MATTHEW S. WOLF, Judge